Jeffrey S. Abraham
Philip T. Taylor
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, N.Y. 10119
Telephone: (212) 279-5050

Steven J. Toll
Avi S. Garbow
Jason M. Leviton
**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600

*Lead Counsel for Lead Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ESTHER LOWINGER and CHAOXU ZHAO, <br><br> Plaintiffs, <br><br> v. <br><br> PZENA INVESTMENT MANAGEMENT, INC., RICHARD S. PZENA, GOLDMAN SACHS & CO., INC., and UBS SECURITIES LLC, <br><br> Defendants. | C.A. No. 07-CV-10524 (AKH) <br><br> **CONSOLIDATED AMENDED COMPLAINT** <br><br> **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

Lead Plaintiffs, Esther Lowinger and Chaoxu Zhao ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, for their complaint against defendants, allege the following based upon personal knowledge as to themselves and their own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through their attorneys, which included, among other things, a

review of the defendants' public documents, and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Pzena Investment Management ("Pzena", or the "Company"), advisories about the Company, and information readily obtainable on the Internet.

## INTRODUCTION

1.   This action is brought on behalf of a class (the "Class") consisting of persons who purchased or otherwise acquired shares of Pzena Investment Management, Inc. ("Pzena" or the "Company") Class A common stock (the "Common Stock") issued pursuant or traceable to its initial public offering ("IPO") which commenced on October 24, 2007. Defendants made untrue statements of material fact and omitted to state material facts regarding a pattern of net redemptions in the largest mutual fund advised by Pzena which existed at the time of the IPO -- the John Hancock Classic Value Fund. The subsequent disclosure of these facts resulted in the price of the Company's stock declining causing Plaintiffs and other members of the Class to suffer damages.

## JURISDICTION AND VENUE

2.   The claims asserted herein arise under Sections 11 and 12(a)(2) of the Securities Act of 1933, as amended (the "Securities Act"), respectively 15 U.S.C. § 77k, 77l(a)(2). Jurisdiction exists pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v, and 28 U.S.C. §§ 1331, and 1337.

3.   Venue is proper in this District because defendant Pzena maintains its headquarters in this District, defendant Richard Pzena works in this District, defendants Goldman Sachs & Co, Inc. and UBS Securities LLC maintain principal places of business in this

District, and the statements alleged to be untrue were prepared and disseminated within this District.

4. Defendants used the instrumentalities of interstate commerce, the U.S. mails and the facilities of the national securities markets in connection with issuing their untrue statements of material fact or omissions of material fact.

## PARTIES

### Plaintiffs

5. (a) Plaintiff Esther Lowinger purchased shares of Pzena Common Stock issued pursuant or traceable to the IPO and was damaged thereby. A copy of Ms. Lowinger's certification concerning her purchase of Pzena securities was previously filed with the Court and is incorporated herein by reference.

(b) Plaintiff Chaoxu Zhao purchased shares of Pzena Common Stock issued pursuant or traceable to the IPO and was damaged thereby. A copy of Mr. Zhao's certification concerning his purchase of Pzena securities was previously filed with the Court and is incorporated herein by reference.

### Defendants

6. Pzena is a Delaware corporation with its principal executive offices located at 120 West 45th Street, 20th Floor, New York, NY 10036. Pzena provides investment advisory services to: funds; individuals, typically high net worth individuals; investment companies; charitable organizations; corporations; state or municipal government entities; pension and profit sharing plans; and pooled investment vehicles.

7. Defendant Richard S. Pzena is the Company's Chairman, Chief Executive Officer, and Co-Chief Investment Officer. Mr. Pzena owned 24,728,620 shares of Pzena

Common Stock, representing 42.7% of the Company's outstanding shares of Common Stock prior to the IPO.

8.   Defendant Goldman Sachs & Co, Inc. ("Goldman Sachs"), is an investment banking firm which maintains its principal executive offices at 85 Broad Street, New York, NY 10004. Goldman Sachs acted as a co-lead underwriter with respect to the IPO and was directly responsible for the distribution and sale of at least 2,135,000 shares sold in the IPO with respect to which the $1.26 per share underwriting commissions and discounts resulted in total fees of $2,690,100.

9.   Defendant UBS Securities LLC ("UBS"), is an investment banking firm which maintains offices at 299 Park Avenue, New York, NY 10171. UBS acted as a co-lead underwriter with respect to the IPO and was directly responsible for the distribution and sale of at least 2,135,000 shares sold in the IPO with respect to which the $1.26 per share underwriting commissions and discounts resulted in total fees of $2,690,100.

10.   Defendants Goldman Sachs and UBS are collectively referred to herein as the "Underwriter Defendants."

## CLASS ACTION ALLEGATIONS

11.   Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the Class consisting of all persons who purchased or otherwise acquired shares of Pzena Common Stock issued pursuant or traceable to the IPO. Excluded from the Class are Defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors, and assigns, and any entity in which Defendants have or had a controlling interest.

12.   The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time

and can only be ascertained through appropriate discovery, based upon the fact that millions of shares of Pzena Common Stock were sold in the IPO, Plaintiffs believe that there are hundreds, if not thousands, of Class members. Members of the Class may be identified from records maintained by Pzena, its transfer agent or the underwriters for the IPO.

13.     Plaintiffs' claims are typical of the claims of the other members of the Class in that all members of the Class have been damaged by Defendants' untrue statements or omissions of material fact, which caused members of the Class to purchase Pzena Common Stock at artificially inflated prices.

14.     Plaintiffs will fairly and adequately protect the interests of the other members of the Class. To assist in that endeavor, Plaintiffs have retained counsel competent and experienced in class and securities litigation. Plaintiffs' interests are in no way antagonistic to the interests of the Class.

15.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

>   (a)     Whether the Securities Act was violated by Defendants' acts, as alleged herein;
>
>   (b)     Whether any materially false or misleading statements were made in the Prospectus and Registration Statement (defined below); and
>
>   (c)     To what extent the members of the Class have sustained damages and the proper measure of damages.

16.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore,

because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to pursue individual redress for the damages caused to them by Defendants' acts. Plaintiffs are not aware of any difficulty that will be presented in managing this action as a class action.

## SUBSTANTIVE ALLEGATIONS

17. On October 24, 2007, Pzena commenced its IPO for 6,100,000 shares of Common Stock at a price of $18.00 per share to the investing public for total proceeds of approximately $109,800,000. The IPO was accomplished through a prospectus (the "Prospectus") filed as part of a Form S-1 registration statement (the "Registration Statement") with the Securities and Exchange Commission ("SEC").

18. Pzena generates management fees and incentive fees, which are referred to as advisory fees, by managing investment assets. Pzena's advisory fees are primarily driven by the level of the amount of funds under management ("AUM"). Pzena's AUM increases or decreases with the net inflows or outflows of funds into the various investment strategies and with the performance of the investments therein.

19. A significant portion of Pzena's business is generated as a sub-investment advisor to funds owned by other institutions. The Company's most significant sub-investment advisor relationship with John Hancock Funds, LLC ("John Hancock"), accounted for 19% and 22% of revenues for the respective six months ended June 30, 2006 and 2007. John Hancock is a subsidiary of Manulife Financial Corporation ("Manulife"), a leading Canadian-based financial service company, operating worldwide, offering a diverse range of financial protection products and wealth management services. The sub-investment advisory agreement with the John Hancock Classic Value Fund, the largest of those funds, represented all, or substantially all, of that revenue during those periods. *See* Prospectus at 17. The John Hancock funds are open-

ended mutual funds allowing their shareholders to redeem their shares at any time at the existing net asset value of the funds.

20. On September 30, 2007, of Pzena's $28.9 billion AUM, $12.9 billion of which was classified under sub-advisory relationships, $8.7 billion was held in the John Hancock Classic Value Fund representing approximately 67% of the sub-advised AUM and 30% of the Company's total AUM.

21. In describing the Company's business, the Prospectus states (on page 84) under a heading called "Our Investment Strategies" that:

> We understand that our ability to retain and grow assets as a firm has been, and will be, driven primarily by delivering attractive investment results to our clients. As a consequence, we have prioritized, and will continue to prioritize, investment performance over asset accumulation. Where we deemed it necessary, we have closed certain products to new investors in order to preserve capacity to effectively implement our concentrated investment strategies for the benefit of existing clients. We stopped accepting new clients in our Small Cap Value strategy in 2001 and, over the intervening years, have taken similar measures with regard to Mid Cap Value, Value Service, and All Cap Value and, in the third quarter of 2006, Large Cap Value. After closing products to new investors, we maintain waiting lists of potential clients who have expressed interest in investing in these strategies. Additional capacity may be created by asset flows or substantial growth in the markets in which we invest, and we will periodically add new clients as a result of additional capacity. As a result, **we have recently re-opened our Large Cap Value, Value Service, Small Cap Value, Mid Cap Value and All Cap Value strategies, primarily as a result of the growth in their respective investable universes.** (Emphasis added).

22. This statement contained untrue statements of material fact and omitted to state material facts required to be stated to make the statements not misleading because it did not disclose that the primary motivation for re-opening the John Hancock Classic Value Fund was that the fund had fallen into net redemptions. Rather, Defendants incorrectly stated that the funds were being re-opened "*primarily as a result of the growth in their respective investable universes*" – not because of net redemptions.

23. The Prospectus sought to reassure the investing public about the popularity of the funds it managed by stating (on page 5) under a heading titled "Recent Developments" that: "As of September 30, 2007, our AUM was $28.9 billion. The $1.8 billion decline in our AUM from June 30, 2007 to September 30, 2007 was due to approximately $2.1 billion of market depreciation, which was *partially offset by $0.4 billion of net inflows*." (Emphasis added).

24. The disclosures of "Our Investment Strategies" and "Recent Developments" contained untrue statements of material facts and omitted to state material facts required to be stated to make the statements not misleading because, at the time these statements were made (*i.e.*, on October 24, 2007), the Company was *already experiencing significant net redemptions in the John Hancock Classic Value Fund*. Those redemptions were driven by the John Hancock Classic Value Fund significantly under-performing other alternative investments and the ability of individual investors to redeem (or sell) their shares at any time because of it being an open-ended fund.

25. On November 16, 2007, *Reuters* carried a story on its newswire service disclosing that the John Hancock Classic Value Fund, which was managed by Pzena, was running $2 billion less in sales this year than it did last year and that the fund had been reopened on October 1, 2007 (more than three weeks prior to the IPO), *because it had fallen into net redemptions*. More specifically, Keith Hartstein, president of John Hancock Funds, stated in the *Reuters* article that "We reopened [the fund] October 1 *because the fund had fallen into net redemptions*. Reopening has helped a little. Sales have picked up a little bit, *but it's still in significant net redemptions* . . . The net redemptions have continued and, in fact, have picked up pace in the month of November. *Actually, since October 1, it has been running at about $20 million a day in redemptions. So it's disappointing*." (emphasis added).

26. On November 20, 2007, *Reuters* again reported that the John Hancock Funds were re-opened because of net redemptions, quoting Mr. Harstein as saying that *"The $8 billion Classic Value Fund managed by Pzena for John Hancock Funds is seeing redemptions at the rate of $20 million a day since Oct. 1* and has sold $2 billion less so far in 2007 than in 2006." (emphasis added). Accordingly, in the three weeks prior to the issuance of the Prospectus the fund experienced over $300,000,000 in redemptions.

27. In reaction to this disclosure, Pzena's common stock declined to close down $1.56 per share to $13.75 per share down, more than 10% from its previously reported closing price and more than 23% decline from the IPO price of $18.00 per share.

28. Then, on January 10, 2008, the Company announced that Pzena's AUM as of December 31, 2007 had fallen by 13% from $27.3 billion a year earlier to $23.7 billion. The vast majority of the decrease in AUM was in the sub-advised accounts which had declined by $3.3 billion from $12.9 billion to $9.6 billion. On this news, the Company's share price fell from a closing of $11.46 on January 10, 2008 to close at $9.98 on January 11, 2008

29. Approximately a month later, on February 11, 2008, the Company announced its 2007 year end results and disclosed that its AUM as of January 31, 2008 had fallen to $22.7 billion from $27.9 billion a year earlier with a net outflow of $1.7 billion from Pzena's sub-advised accounts during the fiscal quarter ended December 31, 2007.

30. On March 10, 2008, the Company announced that its AUM as of February 29, 2008 had fallen to $21.4 billion from $28.1 billion a year earlier.

31. On or about March 15, 2008, the John Hancock Classic Value Fund issued its annual report for the year ended December 31, 2007. Included in the annual report was a "Discussion of Fund Performance" by Pzena stating, in part, that:

> For the year ended December 31, 2007, John Hancock Classic Value Fund's Class A, Class B, Class C, Class I and Class R1 shares posted total returns of –14.20%, –14.80%, –14.80%, –13.86% and –14.49%, respectively, at net asset value. The Fund trailed both the –0.17% return of the Russell 1000 Value Index and the 1.42% return of the average large value fund, according to Morningstar, Inc.
>
> The Fund lagged its benchmark index and peer group average in 2007, with most of the underperformance occurring over the last six months. The recent decline in financial stocks, which comprised the portfolio's largest sector weighting, had the biggest negative impact on performance.

## NO SAFE HARBOR

32.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any allegedly untrue statement pled herein because, as noted above, when the statements were made - or in the case of an omission were not made – there were already significant net redemptions in the John Hancock Classic Value Fund.

## COUNT I

### Violation of Section 11 of the Securities Act

33.     Plaintiffs repeat and reallege each and every allegation made above as if fully set forth herein.

34.     This Count is brought pursuant to Sections 11 of the Securities Act, 15 U.S.C. § 77k, against all of the Defendants.

35.     The Registration Statement contained untrue statements of material fact and omitted to state material facts required to be stated to make the statements not misleading.

36.     The Company is the issuer of Pzena's Common Stock sold pursuant or traceable to the Registration Statement. As an issuer of the shares, Pzena is strictly liable to Plaintiffs and the Class for the material untrue statements and omissions.

37. Defendant Richard S. Pzena, either individually or through an attorney-in-fact, signed the Registration Statement and served as an executive and director of Pzena at all times relevant to this action and is, therefore, liable for the untrue statements of material fact and omitted material statements made in the Registration Statement.

38. Defendants Goldman Sachs and UBS were underwriters for the IPO within the meaning of Section 11(a)(5) of the Securities Act, 15 U.S.C. § 77k(a)(5).

39. Defendants did not make a reasonable investigation or lacked reasonable grounds to believe that each statement made in the Registration Statement and the Prospectus was true and did not omit any material facts.

40. Plaintiffs and the Class have sustained damages. The value of the Company's Common Stock has declined substantially subsequent and due to Defendants' violations of the Securities Act. On November 21, 2007, the date the original lawsuit was commenced against Pzena, the Company's Common Stock closed at $13.72 per share, more than 23% less than the IPO price of $18.00 per share.

41. At the time of purchasing Pzena Common Stock, Plaintiffs were without knowledge of the untrue statements or material omissions alleged herein and could not have reasonably discovered these facts. Less than one year has elapsed from the time Plaintiffs discovered or reasonably could have discovered the facts upon which this Complaint is based to the time this Complaint was filed. Less than three years has elapsed from the time the securities upon which this Count is based were *bona fide* offered to Plaintiffs and other members of the Class.

## COUNT II

### Pursuant to Section 12(a)(2) of the Securities Act

42. Plaintiffs repeat and reallege each and every allegation made above as if fully set forth herein.

43. This Count is brought for violation of Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), against the Underwriter Defendants, each of whom offered and sold Pzena Common Stock or solicited the sale of such stock to the Class in the IPO by means of the Registration Statement and Prospectus. The Underwriter Defendants used the means and instrumentalities of interstate commerce and the U.S. mails. The Underwriter Defendants' liability is predicated on negligence, and does not sound in fraud.

44. The Registration Statement and Prospectus included untrue statements of material fact and omitted to state material facts necessary in order to make the statements, in light of the circumstances in which they were made, not misleading.

45. Plaintiff and the members of the Class did not know, nor could they have known, of the untruths or omissions contained in the Registration Statement and Prospectus.

46. The Underwriter Defendants were obligated to make a reasonable and diligent investigation of the statements contained in the Registration Statement and Prospectus to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading. The Underwriter Defendants failed to make a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Registration Statements and Prospectus were accurate and complete in all material respects.

47. This claim has been brought within one year after the discovery of the untrue statements and omissions in the Registration Statement and Prospectus and within three years after Pzena's Common Stock was sold to the Class in connection with the IPO.

48. By reason of the misconduct alleged herein, the Defendants named in this Count violated Section 12(a)(2) of the Securities Act and are liable to Plaintiff and the members of the Class who purchased or acquired Pzena Common Stock issued pursuant or traceable to the IPO, each of whom has been damaged as a result of such violations.

49. Plaintiffs and the members of the Class who purchased Pzena Common Stock in the IPO hereby seek rescission of their purchases and hereby tender to the Defendants named in this Count the Common Stock, which Plaintiff and other members of the Class continue to own, in return for the consideration paid for those securities, together with interest thereon, and rescissory damages.

**Basis for Information and Belief**

50. Plaintiffs' information and belief is based upon, in part, a review of: (a) filings made with the SEC concerning Pzena, including the Registration Statement, Prospectus and Form 8-Ks referred to in this Complaint; (b) reports issued by the John Hancock Classic Value Fund; and (c) newswire reports and other publicly-available information concerning Pzena.

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

A. Determining that this action is a proper class action, certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure, and certifying their counsel as class counsel;

B.  Awarding compensatory damages in favor of Plaintiffs and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, including pre-judgment and post-judgment interest thereon;

C.  Awarding Plaintiffs and the Class rescission or a rescissory measure of damages pursuant to Section 12(b) of the Securities Act, 15 U.S.C. § 77l(b), on Count II;

D.  Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.  Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury.

Date: April 7, 2008

**ABRAHAM, FRUCHTER & TWERSKY, LLP**

By: /s/ Jeffrey S. Abraham
Jeffrey S. Abraham
Philip T. Taylor
One Penn Plaza, Suite 2805
New York, N.Y. 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655

**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
Steven J. Toll
Avi S. Garbow
Jason M. Leviton
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

*Lead Counsel for Lead Plaintiffs*