UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

ESTHER LOWINGER,                          :
                                          :     Master File No. 07 CV 10524 (AKH)
                    Plaintiff,            :
                                          :
          v.                              :
                                          :
PZENA INVESTMENT MANAGEMENT,              :
INC., et al.,                             :
                                          :
                    Defendants.           :
                                          :
--------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF
THE PZENA DEFENDANTS' MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT**


Brian H. Polovoy
E. Alexandra Dosman
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
bpolovoy@shearman.com

Attorneys for Defendants
Pzena Investment Management, Inc.
and Richard S. Pzena

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 3

    A.  Pzena's Investment Advisory Services ............................................................. 3

    B.  Pzena's IPO and Prospectus ............................................................................ 4

    C.  Procedural History ........................................................................................... 6

ARGUMENT ...................................................................................................................... 7

  PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 11 OF
  THE SECURITIES ACT OF 1933 ................................................................................. 8

    A.  Alleged Misstatement 1--- Describing Pzena's Decline in Assets
      Under Management --- Was Neither False Nor Misleading ............................. 9

      1.  Pzena Had No Duty to Disclose the Net Outflows from the
        John Hancock Classic Value Fund ................................................. 9

      2.  Information Concerning Outflows from the John Hancock
        Classic Value Fund Was Not Material ......................................... 14

    B.  Alleged Misstatement 2 --- The Reason for the Reopening of
      Pzena's Investment Strategies --- Was Neither False Nor Misleading ............. 17

CONCLUSION ................................................................................................................ 19

### LIST OF AFFIDAVITS WITH EXHIBITS

Affidavit of Brian H. Polovoy, sworn to May 22, 2008

    Exhibit A:  True and correct copy of the Consolidated Amended Complaint,
                 filed April 7, 2008

    Exhibit B:  True and correct copy of the Prospectus of Pzena Investment
                 Management, Inc., dated October 24, 2007

# TABLE OF AUTHORITIES

## CASES

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007)............................................7, 15

Demaria v. Andersen, 318 F.3d 170 (2d Cir. 2002) ......................................................16

Garber v. Legg Mason, Inc., 537 F. Supp. 2d 597 (S.D.N.Y. 2008) .................................... passim

Glassman v. Computervision Corp., 90 F.3d 617 (1st Cir. 1996) .................................13

I. Meyer Pincus & Assoc. v. Oppenheimer & Co., 936 F.2d 759 (2d Cir. 1991)...........................8

In re Initial Public Offering Sec. Litig., 358 F. Supp. 2d 189 (S.D.N.Y. 2004) ...........................12

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007)........................................................7

Klein v. General Nutrition Co., 186 F.3d 338 (3d Cir. 1999)........................................16

Lowinger v. Johnson, No. 05 CV 316, 2007 WL 2344882
    (W.D.N.C. Aug. 16, 2007)...................................................................9

In re N2K, Inc. Sec. Litig., 82 F. Supp. 2d 204 (S.D.N.Y. 2000),
    aff'd, 202 F.3d 81 (2d Cir. 2000) ................................................9, 15

Olkey v. Hyperion 1999 Term Trust, Inc., 98 F.3d 2 (2d Cir. 1996) .....................................14, 17

Panther Partners Inc. v. Ikanos Communications, Inc., 538 F. Supp. 2d 662
    (S.D.N.Y. 2008)....................................................................7, 8, 10, 16

Schoenhaut v. American Sensors, Inc., 986 F. Supp. 785 (S.D.N.Y. 1997)......................... passim

Steinberg v. PRT Group, 88 F. Supp. 2d 294 (S.D.N.Y. 2000).........................................8, 14, 15

TSC Industries, Inc. v. Northway, 426 U.S. 438 (1976).............................................14, 17

In re Sofamor Danek Group, Inc., 123 F.3d 394 (6th Cir. 1997) ....................................12

In re Tamoxifen Citrate Antitrust Litig., 466 F.3d 187 (2d Cir. 2006)..........................................8

In re Turkcell Hetisim Hizmetler A.S. Sec. Litig., 202 F. Supp. 2d 8
    (S.D.N.Y. 2001)...........................................................................13

<u>In re Unicapital Corp. Sec. Litig.</u>, 149 F. Supp. 2d 1353 (S.D. Fla. 2001)...................................16

<u>In re Verifone Sec. Litig.</u>, 784 F. Supp. 1471 (N.D. Cal. 1992),
    <u>aff'd</u>, 11 F.3d 865 (9th Cir. 1993)........................................................................................10

## STATUTES & REGULATIONS

15 U.S.C. § 77k(a) ..............................................................................................................8

17 C.F.R. § 229.101(c)(1)(vii) ..........................................................................................10

17 C.F.R. § 228.101(b)(6) ..................................................................................................11

Defendants Pzena Investment Management, Inc. and Richard S. Pzena respectfully submit this memorandum of law in support of their motion to dismiss plaintiffs' Consolidated Amended Class Action Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Pzena Investment Management, Inc. is the managing member of Pzena Investment Management, LLC (together, "Pzena"), an investment management firm based in New York.  Pzena provides value-oriented investment services to a diverse, global client base of respected and sophisticated investors.  Since its founding in 1995, Pzena has developed a strong industry reputation as a premier value-oriented investment management firm with a record of investment excellence and exceptional client service.

On October 24, 2007, Pzena commenced an initial public offering (the "IPO").  The Prospectus filed in connection with the IPO contained all required disclosures, including risks related to Pzena's role as sub-investment adviser to four mutual funds advised by John Hancock Advisers.  Less than a month after the IPO, Pzena's stock declined by $1.56 per share on the day when a John Hancock executive reportedly stated that the John Hancock Classic Value Fund, a mutual fund sub-advised by Pzena, had "fallen into net redemptions."  Three business days later, Esther Lowinger, a well-seasoned plaintiff, filed this purported class action.

Plaintiffs challenge two disclosures in Pzena's Prospectus: (1) Pzena's statement that a decline in its assets under management was "due to approximately $2.1 billion of market depreciation, which was partially offset by $0.4 billion of net inflows;" and (2) Pzena's statement that it had recently reopened five of its investment strategies

"primarily as a result of the growth in their respective investable universes."  Plaintiffs allege that these disclosures were materially false or misleading because Pzena did not state in the Prospectus that the John Hancock Classic Value Fund was experiencing net redemptions.

As set forth below, these allegations fail to state a claim under Section 11 of the Securities Act of 1933 for two reasons.  First, Pzena had no duty to disclose the net inflows or outflows from the John Hancock Classic Value Fund.  Under settled law, the relevant SEC regulations answer the question as to what material facts are required to be stated in an issuer's registration statement and prospectus.  Here, Pzena disclosed what was required to be stated in its prospectus, including the names of clients with which it had significant relationships.  Nothing in the applicable SEC regulations required Pzena to itemize the performance of its clients' accounts.  Indeed, as a matter of law, this information was not required.  Second, plaintiffs fail to plausibly plead that the alleged omissions or misstatements were material.  The asset flows of one account during the period after Pzena's last reported quarter would not and could not have "significantly altered the total mix" of information on which a reasonable investor would rely in deciding to buy Pzena stock pursuant to its IPO --- especially when that information was already publicly available on various internet sites.  Finally, as to the supposed misstatement concerning why Pzena decided to reopen certain of its investment strategies, it is based on a fundamental misreading of the plain words of the Prospectus:  The Prospectus plainly describes why *Pzena* decided to reopen *Pzena's* investment strategies, and it makes no statement as to why *John Hancock Advisers* decided to reopen the *John Hancock Classic Value Fund*.

This is an opportunistic, baseless lawsuit, and it is notable that no institutional shareholder sought to participate as a plaintiff. Plaintiffs' Amended Complaint fails to state a claim, and it should be dismissed now.

## STATEMENT OF FACTS[1]

### A.    Pzena's Investment Advisory Services

Pzena Investment Management, Inc. is a Delaware corporation with its principal place of business in New York, New York. It is the sole managing member of Pzena Investment Management, LLC, an investment advisory services operating company. See Prospectus dated October 24, 2007, a copy of which is attached as Ex. B to the Polovoy Aff. at 8, 45. Defendant Richard S. Pzena, who founded Pzena Investment Management, LLC in 1995, serves as the Chairman, Chief Executive Officer and Co-Chief Investment Officer of Pzena Investment Management, Inc. Id. at 92.

Pzena provides both direct investment advisory services and sub-investment advisory services. As of June 30, 2007, Pzena managed separate accounts on behalf of over 375 institutions and high net worth individual investors and acted as sub-investment adviser for 12 SEC-registered mutual funds and 10 offshore funds. Pzena has sub-investment advisory agreements with four mutual funds operated by John Hancock. The most significant of these agreements is with the John Hancock Classic Value Fund. Id. at 17-18.

Pzena offers clients ten value-oriented "investment strategies" which span different market capitalization segments in both U.S. and international markets. Each of

---

[1]    All citations to "¶ __" are to the Consolidated Amended Complaint dated April 7, 2008 (Dkt. No. 15), a copy of which is attached as Ex. A to the Affidavit of Brian H. Polovoy, sworn to May 22, 2008 ("Polovoy Aff.").

its ten investment strategies comprises concentrated portfolios of businesses selected through a rigorous, proprietary research process. Id. at 1, 4. Pzena's investment strategies are employed on behalf of its clients, both in separately-managed accounts (such as for institutions and high net-worth individuals) and sub-advised accounts (such as for SEC-regulated mutual funds). Id. at 1, 3. Pzena generates revenue from the receipt of advisory fees earned on the assets it manages for its clients. ¶ 18; Polovoy Aff. Ex. B at 60. Accordingly, Pzena's advisory fees are driven primarily by the level of its assets under management ("AUM"). ¶ 6; Polovoy Aff. Ex. B at 60.

**B.    Pzena's IPO and Prospectus**

On October 24, 2007, Pzena commenced an IPO of 6,100,000 of its Class A common stock at $18.00 per share, pursuant to a prospectus filed as part of a Form S-1 Registration Statement (the "Prospectus"). ¶ 17. Goldman, Sachs & Co. and UBS Securities LLC acted as co-lead underwriters of the IPO. ¶¶ 8, 9.

In accordance with applicable SEC requirements, the Prospectus contained a series of robust disclosures warning investors of the risks associated with the company and its operations. Prominent among these were lengthy descriptions of the risks of a decline in Pzena's AUM, revenues and net income as a result of increased client withdrawals or reduction of asset inflows. The Prospectus specifically and repeatedly warned of the risk of a decline in AUM due to client withdrawals, and the Prospectus highlighted the risks relating to Pzena's sub-investment advisory relationships with mutual funds advised by John Hancock Advisers (Polovoy Aff. Ex. B at 16-27, emphasis added):

***Our sub-investment advisory relationships with mutual funds advised by John Hancock Advisers represent a significant source of our revenues, and the termination of these relationships would impair our revenues and earnings.***

***If our investment strategies perform poorly, <u>we could lose clients or suffer a decline in asset under management</u> which would impair our earnings.***
...

- Our existing clients <u>might withdraw their funds from our investment strategies</u>, which would cause the level of our advisory fees to decline; ...

- Third-party financial intermediaries, advisers or consultants may rate our investment products poorly, <u>which may lead our existing clients to withdraw funds from our investment strategies or to the reduction of asset inflows</u> from these third parties or their clients

***Because our clients can reduce the amount of assets we manage for them, or terminate our agreements with them, on short notice, we may experience unexpected declines in revenue and profitability.***

- Institutional and individual clients, and <u>the funds with which we have sub-investment advisory agreements, can</u> terminate their relationships with us, or <u>reduce the aggregate amount of AUM</u> ...

- Poor performance relative to that of other investment management firms tends to result in <u>decreased investments in our investment strategies, increased withdrawals from our investment strategies</u> ... .

***Difficult market conditions can adversely affect our business by reducing the market value of the assets we manage or causing our clients to withdraw funds.***

- A decline in the prices of securities held in our clients' portfolios would be expected to cause our revenue and net income to decline by:

- <u>Causing the value of our AUM to decline</u>, which would result in lower advisory fees, or <u>causing some of our clients to withdraw funds from our investment strategies</u> ... which would also result in lower advisory fees.

***Our investment approach may underperform other investment approaches, which may result in <u>significant withdrawals of client assets or client departures or a reduction in our AUM</u>.***

In management's discussion and analysis of financial condition and results

of operations, the Prospectus again warned that: "Our advisory fees may fluctuate based

on a number of factors, including… <u>changes in AUM</u> due to appreciation or depreciation of our investment portfolios, <u>and the levels of the contribution and withdrawal of assets by new and existing clients</u>…" Polovoy Aff. Ex. B at 61.

### C. Procedural History

Esther Lowinger filed this action on November 21, 2007. <u>Lowinger v. Pzena Investment Management, Inc., et al.</u>, No. 07 CV 10524. Shortly thereafter, a second individual filed an identical complaint. <u>White v. Pzena Investment Management, Inc., et al.</u>, No. 08 CV 00406. Each complaint purported to be brought on behalf of a class of all persons who purchased or otherwise acquired Pzena stock "in its initial public offering." (Dkt. No. 1 ¶ 1.)

Notably, no institutional investor sought to be appointed as lead plaintiff. The only lead plaintiff movants were Ms. Lowinger (who alleged that she purchased 100 shares of Pzena stock) and Mr. Chaoxu Zhao (who alleged that he purchased 260 shares of Pzena stock). (Dkt. No. 1, Reform Act certification; Dkt. No. 6.) On February 13, 2008, the Court "so ordered" Lowinger and Zhao's stipulation (1) consolidating the two identical actions, (2) appointing Lowinger and Zhao as Co-Lead Plaintiffs, and (3) appointing their lawyers as Co-Lead Counsel. (Dkt. No. 9.)

On April 7, 2008, Lowinger and Zhao filed a Consolidated Amended Complaint. (Dkt. No. 15.) The Amended Complaint added as defendants the lead underwriters of Pzena's IPO (Goldman, Sachs & Co. and UBS Securities LLC), alleged one misrepresentation (in addition to the one omission alleged in the original complaints), and purported to expand the putative class from all persons who purchased or otherwise acquired Pzena stock "in its initial public offering" (Dkt. No. 1 ¶ 1) to all persons who

purchased or otherwise acquired shares of Pzena stock "issued pursuant or traceable to its initial public offering." ¶ 1.[2]

## ARGUMENT

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court changed the pleading standards applicable to a Rule 12(b)(6) motion. Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege "enough facts to state a claim to relief that is plausible on its face" or failed to "raise a right to relief above the speculative level." Bell Atl. Corp., 127 S. Ct. at 1965, 1974; Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of a cause of action will not do." Id. at 1965. Indeed, the Supreme Court's standard "calls for enough facts to raise a ***reasonable expectation*** that discovery will reveal evidence of" the alleged wrongdoing. Id. (emphasis added). Bell Atlantic applies equally to claims under Section 11 of the Securities Act. See Panther Partners Inc. v. Ikanos Communications, Inc., 538 F. Supp. 2d 662, 667 (S.D.N.Y. 2008); Garber v. Legg Mason, Inc., 537 F. Supp. 2d 597, 609-610 (S.D.N.Y. 2008).

---

[2]    Lead Plaintiff Esther Lowinger is no stranger to filing shareholder class action lawsuits. See, e.g., Lowinger v. Aztar Corp., Civ. A. No. 2045-CC (Del. Ch.); Lowinger v. Arkwright (Atlantic Liberty Financial Corp.), Civ. A. No. 1863-CC (Del. Ch.); Lowinger v. Strauss (BCAM Int'l, Inc.), No. 99 CV 1017 (E.D.N.Y.). Her family, represented by the same counsel, has also filed multiple shareholder class action lawsuits, including another one filed in this Court last month. See, e.g., Lowinger v. Global Cash Access Holdings, Inc., No. 08 CV 3516 (SWK) (S.D.N.Y.); Lowinger v. Reckson Associates Realty Corp., No. 06 CV 5873 (E.D.N.Y.); Lowinger v. New York Community Bancorp, Inc., No. 04 CV 5065 (E.D.N.Y.); Lowinger v. Johnson, No. 05 CV 316, 2007 WL 2344882 (W.D.N.C. Aug. 16, 2007); Lowinger v. Firstplus Financial Group, Inc., No. 3:98 CV 2731 (N.D. Tex.); Lowinger v. Metros (Adelphia Comm. Corp.), Civ. A. No. 19519 (Del. Ch.); Lowinger v. Tele-Communications, Inc., Civ. A. No. 16490 (Del. Ch.); Lowinger v. Citron (Ticketmaster Online-Citysearch, Inc.), Civ. A. No. 16940 (Del. Ch.).

On a motion to dismiss a Section 11 suit, the Court may, of course, look outside the pleadings to consider the text of the Prospectus itself. See I. Meyer Pincus & Assoc. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991); Steinberg v. PRT Group, 88 F. Supp. 2d 294, 299 (S.D.N.Y. 2000); Schoenhaut v. American Sensors, Inc., 986 F. Supp. 785, 787 (S.D.N.Y. 1997); Garber, 537 F. Supp. 2d at 607 n.1, 610. Moreover, while the Amended Complaint's well-pleaded allegations are, solely for purposes of this motion, accepted as true, "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness," and "naked assertions" without supporting facts need not be accepted as true. In re Tamoxifen Citrate Antitrust Litig., 466 F.3d 187, 201, 204 (2d Cir. 2006).

## PLAINTIFFS FAIL TO STATE A CLAIM
## UNDER SECTION 11 OF THE SECURITIES ACT OF 1933

Plaintiffs' Section 11 claim should be dismissed because plaintiffs do not allege a material misstatement or omission that Pzena was obligated to disclose in its Prospectus. Section 11 of the 1933 Act provides in pertinent part:

> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may . . . sue [enumerated persons and entities].

15 U.S.C. § 77k(a). In order to state a claim, plaintiffs must first establish that **both** "(1) the defendant ha[d] an affirmative duty to disclose information but fail[ed] to do so, **and** (2) the untrue or omitted information was material." Panther Partners, Inc., 538 F. Supp. 2d at 668 (emphasis added). Put another way, "[m]ateriality alone does not demand disclosure, nor does the duty to disclose encompass non-material information." Id.

**A.      Alleged Misstatement 1 --- Describing Pzena's Decline in Assets Under Management --- Was Neither False Nor Misleading**

*The $1.8 billion decline in our AUM from June 30, 2007 to September 30, 2007 was due to approximately $2.1 billion of market depreciation, which was <u>partially offset by $0.4 billion of net inflows</u>.* (¶ 23; emphasis in Amended Complaint; Polovoy Aff. Ex. B at 5)

Plaintiffs do not --- and cannot --- allege that this statement is incorrect:  it is undisputed that Pzena had "net inflows" of customer funds during the quarter ending September 30, 2007 (the last quarter before Pzena's Registration Statement went effective on October 24, 2007).  Instead, plaintiffs allege that this disclosure was materially misleading because "at the time these statements were made (<u>i.e.</u>, on October 24, 2007), Pzena was already experiencing net redemptions in the John Hancock Classic Value Fund."  ¶ 24.  This allegation fails to state a claim because (1) Pzena had no obligation to include in its Prospectus the net inflow or outflow from any one particular account (much less to include in its Prospectus the net inflow or outflow *within* the fiscal quarter in progress as of the date of the IPO), and (2) the "omitted" data was not material because it was publicly available and there is no likelihood that the "omitted" data would have "**_significantly altered_** the 'total mix' of information made available" to a purchaser of Pzena common stock.

1.      <u>Pzena Had No Duty to Disclose the Net Outflows from the John Hancock Classic Value Fund</u>

This "omission" fails to state a claim because Pzena was not required to include such information in its Prospectus.  The "relevant SEC regulations answer the question as to what material facts are required to be stated in an issuer's registration statement and prospectus."  <u>In re N2K, Inc. Sec. Litig.</u>, 82 F. Supp. 2d 204, 207 (S.D.N.Y.), <u>aff'd</u>, 202 F.3d 81 (2d Cir. 2000); <u>Lowinger v. Johnson</u>, No. 05 CV 316,

2007 WL 2344882 (W.D.N.C. Aug. 16, 2007) (same); Panther Partners, Inc., 538 F. Supp. 2d at 668 (same).  Regulation S-K required that "the name of any customer and its relationship, if any, with the registrant or its subsidiaries shall be disclosed if sales to the customer by one or more segments are made in an aggregate amount equal to 10 percent or more of the registrant's consolidated revenues and the loss of such customer would have a material adverse effect on the registrant and its subsidiaries taken as a whole."  17 C.F.R. § 229.101(c)(1)(vii).  Pzena's Prospectus made the required disclosures, and there is no allegation to the contrary.  Polovoy Aff. Ex. B at 17, 88, 3, 80.

        Nothing in Regulation S-K or elsewhere required Pzena to disclose the net inflow or outflow from the AUM of any particular account, even Pzena's largest account. Under settled law, an issuer has no duty to disclose a reduction in sales or increase in asset withdrawals --- even of its largest account --- when its prospectus does not make future predictions as to revenue from that client and warns that the loss of the relationship could have a material effect on the issuer.  See Schoenhaut, 986 F. Supp. at 793 (as a matter of law issuer had no duty to disclose in its prospectus that orders of a customer that accounted for 32 percent of sales in the last quarter were decreasing both in absolute terms and as a percentage of the issuer's overall sales); Garber, 537 F. Supp. 2d at 613 (asset management company had no duty to disclose that it was "experiencing an increase" in customer withdrawals where prospectus disclosed that "clients can [presently] terminate their relationships with us… for any number of reasons…"); In re Verifone Sec. Litig., 784 F. Supp. 1471, 1484 (N.D. Cal. 1992), aff'd, 11 F.3d 865 (9th Cir. 1993) (no duty to disclose that customers listed in prospectus were not currently ordering from the issuer).

In Schoenhaut, plaintiff (represented by the same Lead Counsel as in this case) alleged that American Sensors, Inc., which manufactured carbon monoxide detectors, violated Section 11 by failing to disclose in its prospectus that sales to its largest customer, Sam's Club, were "decreasing in absolute terms and as a percentage of the Company's overall sales." Schoenhaut, 986 F. Supp. at 793. Judge Jones noted that American Sensors had, as required by Regulation S-B, disclosed that Sam's Club was its largest customer in the last fiscal quarter reported (ending Sept. 30, 1994) and accounted for 32 percent of the company's sales.[3] Id. The court held that the failure to disclose the level of sales to Sam's Club during the fiscal quarter immediately preceding the prospectus (ending December 31, 1994) or the month of January 1995 (when the Prospectus was issued) was "not a material omission as a matter of law." Id. Judge Jones stated that "the Prospectus did not list the current volume of sales to Sam's Club or predict future sales levels. Nor did the Prospectus even suggest that Sam's Club --- or any other customer --- would remain a customer, let alone a large one. Moreover, the Prospectus warned that the Company's largest customers 'may vary from period to period' and that the loss of a large customer could materially affect the Company." Id.

Here, as in Schoenhaut, Pzena disclosed a client relationship in accordance with the S.E.C.'s regulations. First, the Prospectus listed the percentage of Pzena's revenue that the Hancock funds represented through the last fiscal quarter reported (ending June 30, 2007), and did not list the percentage of Pzena's revenue that the Hancock funds represented in the fiscal quarter immediately preceding the prospectus

---

[3]    Regulation S-B is the equivalent to Regulation S-K that applies to small business issuers and is the source of disclosure requirements for those issuers. Under Regulation S-B, an issuer must describe its "[d]ependence on one or a few major customers." 17 C.F.R. § 228.101(b)(6).

(ending September 30, 2007) or the month of October 2007 (when the Prospectus was

issued). Polovoy Aff. Ex. B at 17, 88, 3. Second, the Prospectus did not predict the

future revenue or AUM of the John Hancock Classic Value Fund. To the contrary, the

Prospectus specifically warned: "Because our clients can reduce the amount of assets we

manage for them, or terminate our agreements with them, on short notice, we may

experience unexpected declines in revenue and profitability." Id. at 17. Third, the

Prospectus did not suggest that the funds Pzena sub-advised for John Hancock Advisers

(or any other clients) would remain as clients; instead, the Prospectus made clear that

"there can be no assurance that our agreements with respect to any of these four mutual

funds [advised by John Hancock Advisers] will remain in place." Id. Fourth, the

Prospectus warned that Pzena's largest clients may vary over time and that the loss of a

large client --- particularly the funds it sub-advised for John Hancock Advisers --- could

have a material effect on the company ("termination of [our sub-investment advisory

relationships with mutual funds advised by John Hancock Advisers] would impair our

revenues and earnings"; clients "might withdraw their funds from our investment

strategies, which would cause the level of our advisory fees to decline"). Id. Plaintiffs

cannot allege that Pzena's statements of historical fact were rendered misleading as a

result of the alleged omissions. In re Initial Public Offering Sec. Litig., 358 F. Supp. 2d

189, 210 (S.D.N.Y. 2004) (citing In re Sofamor Danek Group, Inc., 123 F.3d 394 (6th Cir.

1997)) (disclosure of accurate historical data does not become misleading even if less

favorable results may be predictable by the company in the future).[4]

---

[4]        In Garber, plaintiff alleged that Legg Mason, Inc., an asset management company,
        violated Section 11 by failing to disclose in its prospectus that it was experiencing an
        increase in customer withdrawals due to broker attrition. 537 F. Supp. 2d at 607, 613.
        Citing Schoenhaut, Judge Chin held that plaintiffs' Section 11 claim failed as a matter of

Nor was Pzena obligated, as the Amended Complaint suggests, to disclose the inflow or outflow of AUM for a particular customer *within* the fiscal quarter in progress as of the date of its IPO.  Under settled law, such interim financial information concerning the quarter in progress as of the IPO need not be disclosed.  See, e.g., Schoenhaut, 986 F. Supp. at 791-792 (omission of data showing 11 percent drop in sales in first 26 days of quarter in progress as of IPO not actionable); Glassman v. Computervision Corp., 90 F.3d 617, 632 (1st Cir. 1996) (rejecting assertion that issuer is obligated to disclose interim operating results for the quarter in progress); In re Turkcell Hetisim Hizmetler A.S. Sec. Litig., 202 F. Supp. 2d 8, 12 (S.D.N.Y. 2001) (disclosure of interim financial information required only if interim results represent an "extreme departure from the range of results which could be anticipated based on currently available information.")  Indeed, "the case law recognizes how unworkable and potentially misleading a system of instantaneous disclosure out[side] the normal reporting periods would be."  Id. at 14.  Here, the only specific allegation in the Amended Complaint concerning redemptions in the John Hancock Classic Value Fund prior to the IPO is a statement by Hancock's Keith Hartstein on November 16, 2007 that "since

---

law because Legg Mason had "no duty to disclose" the increase in customer withdrawals where the prospectus stated that it "was the nature of Legg Mason's business" (which is the same business as that of Pzena) that "clients can [presently] terminate their relationships with us . . . for any number of reasons, including . . . loss of key investment management personnel."  537 F. Supp. 2d at 613 (alterations in original).  Pzena's Prospectus similarly warned potential investors of these risks.  Polovoy Aff. Ex. B at 17, 18, 19.  The court also held that plaintiffs' claim was not sufficient under Bell Atlantic where the complaint failed to allege "specific facts regarding the volume of customer withdrawals . . . at the time of the [...] Offering."  537 F. Supp. 2d at 613.  Just as Bell Atlantic was not satisfied by allegations that Legg Mason was "experiencing an increase in customer withdrawals" (id.), Bell Atlantic is not satisfied by plaintiffs' allegation that the Hancock Classic Value Fund "had fallen into net redemptions" as of October 1, 2007.  ¶ 25.  (As discussed below, plaintiffs' specific allegation that redemptions *after* October 1, 2007 had been "running at about $20 million a day" (id.) is not actionable as it concerned the fiscal quarter in progress as of the date of the IPO.)

October 1, [2007, the John Hancock Classic Value Fund] has been running at about $20 million a day in redemptions." ¶ 25.  This allegation concerns the fiscal quarter that was ongoing when Pzena issued the Prospectus on October 24, 2007.  Accordingly, Pzena was not obligated to set forth this information in its Prospectus.

2.    Information Concerning Outflows from the
       John Hancock Classic Value Fund Was Not Material

Furthermore, the alleged omission of information concerning outflows from the John Hancock Classic Value Fund in the fiscal quarter prior to Pzena's IPO was not material.  Materiality is established only on a showing of "a ***substantial likelihood*** that the disclosure of the omitted fact would have been viewed by the reasonable investor as having ***significantly altered*** the 'total mix' of information made available."  TSC Industries, Inc. v. Northway, 426 U.S. 438, 449 (1976) (emphasis added).  In determining whether a statement in a prospectus is materially misleading, the prospectus must be read as a whole.  Olkey v. Hyperion 1999 Term Trust, Inc., 98 F.3d 2, 5 (2d Cir. 1996); Steinberg v. PRT Group, Inc., 88 F. Supp. 2d 294, 302 (S.D.N.Y. 2000).  The test is "whether the defendants' representations, taken together and in context, would have misled a reasonable investor about the nature of the [securities]. . . ."  Olkey, 98 F.3d at 5.

The information allegedly omitted from Pzena's Prospectus --- itemized disclosure of the asset flows of ***one*** account for the period after Pzena's last reported quarter --- would not and could not have "significantly altered the total mix" of information on which a reasonable investor would rely in deciding to buy Pzena stock pursuant to its IPO.  In explaining the decline in AUM during the period from June 30, 2007 to September 30, 2007, the Prospectus stated the amount of net asset flows of ***all*** accounts.  ¶ 23; Polovoy Aff. Ex. B. at 5.  Among other disclosures, the Prospectus also

provided detailed financial data and statements concerning Pzena's AUM and the

performance of its investment strategies.  It stated the annualized returns, gross and net

(representing prior to and after payment of advisory fees, respectively) of Pzena's seven

largest investment strategies, relative to the performance of the relevant market index and

the S&P 500 index, over periods of one year, three years, five years, and since inception.

Id. at 20.  Further, the Prospectus explicitly stated that the historical returns of the

investment strategies are not necessarily indicative of their future performance or the

performance of any of Pzena's other current or future strategies.  Id. at 20, n. 1.  The

Prospectus also contained ample warnings as to the nature of Pzena's business: that is, an

investment firm whose value-oriented investment strategy is vulnerable in certain phases

of the market cycle.  For example, the Prospectus stated that "[d]ifficult market

conditions can adversely affect our business by reducing the market value of the assets

we manage or causing our clients to withdraw funds. … A decline in the prices of

securities held in our clients' portfolios would be expected to cause our revenue and net

income to decline …, or causing some of our clients to withdraw funds from our

investment strategies."  Id. at 17.

        Even prior to Bell Atlantic, courts did not hesitate to dismiss similar

claims on a Rule 12(b)(6) motion.  In re N2K, Inc. Sec. Litig., 82 F. Supp. 2d at 209

(omission of financial data for the first completed quarter immediately preceding a

secondary offering not misleading when prospectus was "replete with warnings and

explanations of risks associated with the company's past financial history and future

expectations"); Steinberg, 88 F. Supp. 2d at 304 (issuer's failure to disclose that it was

losing out to competitors bidding for the same contracts was not misleading "because the

prospectus disclosed these very risks…" and "clearly and unequivocally warned investors that [its] business was highly competitive.")[5]

The conclusion that the alleged omission was not material is further compelled by the fact that the net asset flows of the John Hancock Classic Value Fund, which is listed on the secondary market, were a matter of public knowledge when Pzena issued its Prospectus. The determination of materiality takes into account the "availability [of information] in the public domain." Klein v. General Nutrition Co., 186 F.3d 338, 342 (3d Cir. 1999); Demaria v. Andersen, 318 F.3d 170, 180 (2d Cir. 2002) (in determining the materiality of an alleged omission, courts consider whether the information was material in light of financial information already disclosed to investors); Garber, 537 F. Supp. 2d at 612 (where alleged omission was publicly reported, plaintiffs failed to adequately plead materiality as a matter of law). Here, at all relevant times: (1) monthly AUM for the John Hancock Classic Value Fund was posted on the Morningstar public Internet site, typically within four business days of month end (www.morningstar.com); (2) the daily performance of the John Hancock Classic Value Fund on a real-time basis, as well as historical performance and month-end AUM data, was available on the John Hancock Funds public Internet site (www.jhfunds.com); and (3) current and historical performance, month-end AUM data, and daily historical net asset

---

[5]    All of plaintiffs' other allegations concerning AUM are irrelevant as they concern changes in Pzena's AUM *after* the date the Prospectus was issued (or have nothing to do with the alleged misstatements and omissions in the Prospectus). "In assessing whether a misrepresentation or omission was material, courts may not employ 20/20 hindsight; instead they must consider whether the misrepresentation or omission was material on the date the prospectus or registration statement was issued." Panther Partners, 538 F. Supp. 2d at 668 (quoting In re Unicapital Corp. Sec. Litig., 149 F. Supp. 2d 1353, 1363 (S.D. Fla. 2001)). Here, paragraphs 28 through 31 of the Amended Complaint, to the extent they have any bearing on plaintiffs' claim, concern changes in AUM after the date the Prospectus was issued.

value per share for the John Hancock Classic Value Fund was available on the Yahoo Finance Internet site (www.finance.yahoo.com).  Polovoy Aff. ¶ 4.  Given that broad public dissemination of the information, it can hardly be alleged that there is "a **substantial likelihood** that the disclosure of the omitted fact would have been viewed by the reasonable investor as having **significantly altered** the 'total mix' of information made available."  <u>TSC Indus., Inc.</u>, 426 U.S. at 449 (emphasis added).  Put another way, Pzena's disclosures "taken together and in context" could not have "misled a reasonable investor about the nature of the [securities]. . . ."  <u>Olkey</u>, 98 F.3d at 5.

### B.    Alleged Misstatement 2 --- The Reason for the Reopening of Pzena's Investment Strategies --- Was Neither False Nor Misleading

> *Additional capacity [in our investment strategies] may be created by asset flows or substantial growth in the markets in which we invest, and we will periodically add new clients as a result of additional capacity.  As a result,* ***we have recently reopened our Large Cap Value, Value Service, Small Cap Value, Mid Cap Value and All Cap Value strategies, primarily as a result of the growth in their respective investable universes***.  (¶ 21 (emphasis in Amended Complaint); Polovoy Aff. Ex. B at 84.)

Plaintiffs' claimed "misstatement" --- which neither plaintiffs' counsel alleged in their initial complaints --- is based on a fundamental misreading of the Prospectus (or an attempt to confuse Pzena's "investment strategies" with the John Hancock Classic Value Fund).  Plaintiffs allege that the Prospectus falsely represented Pzena's "primary motivation for <u>re-opening the John Hancock Classic Value Fund</u>."  ¶ 22 (emphasis added).  The basis for this allegation is a quotation attributed to Keith Hartstein, the President of John Hancock Funds, that "We reopened [the John Hancock Classic Value Fund] October 1 because the fund had fallen into net redemptions."  ¶ 25.

Pzena's Prospectus, however, makes no statement as to the reasons why *John Hancock Advisers*, which advises the John Hancock Classic Value Fund, decided to

re-open the *John Hancock Classic Value Fund*.  Instead, as one would expect for an IPO of *Pzena* stock, the Prospectus discussed the investment strategies offered by Pzena and explained why *Pzena* decided to reopen *Pzena's investment strategies*.  Polovoy Aff. Ex. B at 84.  That is clear from simply reading Hartstein's statement (explaining why "we" --- <u>i.e.</u>, John Hancock --- reopened the John Hancock Classic Value Fund) and the Prospectus (explaining why "we" --- <u>i.e.</u>, Pzena --- reopened five of its investment strategies to new customers).  That should be the end of the story.

In any event, there is no suggestion as to how the absence of disclosure of why Hancock reopened its John Hancock Classic Value Fund to new investors rendered Pzena's Prospectus, read as a whole, materially misleading.  As discussed above, the performance and AUM of the John Hancock Classic Value Fund was publicly available on the Internet, and it cannot be suggested that this information "misled a reasonable investor about the nature of" the *Pzena* securities.  <u>Olkey</u>, 98 F.3d at 5.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Dated: New York, New York
       May 22, 2008

Respectfully submitted,

SHEARMAN & STERLING LLP

By:  /s/ Brian H. Polovoy
     Brian H. Polovoy
     E. Alexandra Dosman

599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
bpolovoy@shearman.com

Attorneys for Defendants
Pzena Investment Management, Inc.
and Richard S. Pzena