**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
                                 :

ESTHER LOWINGER, et al.,         :
                                 :

        Plaintiffs,            :        Master File No. 07-cv-10524 (AKH)
                                 :

     - against-              :
                                 :

PZENA INVESTMENT MANAGEMENT  :
INC., et al.,                 :
                                 :

        Defendants.         :
                                 :
---------------------------------------------------------------X


### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

Jeffrey S. Abraham
Philip T. Taylor
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, New York 10119
Tel: (212) 279-5050
Fax: (212) 279-3655

Steven J. Toll
Avi S. Garbow
Jason M. Leviton
**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

**Co-Lead Counsel for Plaintiffs**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    Pzena . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    The IPO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    The Prospectus and the Registration Statement Omitted Material Facts . . . . . . . . . . . . . 3

    Post-IPO Disclosures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.     PLAINTIFF STATE A CLAIM FOR VIOLATION OF SECTION 11 OF THE
          SECURITIES ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.    Section 11 Claims Are Only Subject to Notice Pleading Standards . . . . . 6

        B.    Defendants Were Required to Disclose the Decline in Pzena's AUM
            in the Registration Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            1.    Plaintiffs have Properly Pleaded the Materiality of the Facts
                Relating to the Decline in Pzena's AUM . . . . . . . . . . . . . . . . . . . . 7

            2.    The Materiality of Defendants Failure to Disclose the
                Outflows of AUM Was Not Negated by Other Information
                Available to Investors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                a.    The Risk Factors in the Registration Statement do
                      Not Negate the Materiality of Defendants Failure to
                      Disclose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                b.    Defendants Efforts to Establish Market Knowledge of
                      the Material Undisclosed Facts Also Fails . . . . . . . . . . . 10

            3.    Defendants Were Obligated to Disclose the Material Facts
                 Relating to the Classic Value Fund Outflows in the
                 Registration Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

a.      Defendants Disclosure Obligations Were Not Limited
        by the Itemized Instructions in the Form S-1
        Registration Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

b.      The Registration Statement Also Failed to Make the
        Itemized Disclosures Required by SEC Regulations . . . . 18

II.     PLAINTIFFS PROPERLY STATE A CLAIM FOR RELIEF PURSUANT
        TO SECTION 12(a)(2) OF THE SECURITIES ACT . . . . . . . . . . . . . . . . . . . . . 20

III.    IF THE COURT DETERMINES THAT ANY ASPECT OF THE
        COMPLAINT IS INADEQUATELY PLED, LEAVE TO AMEND
        SHOULD BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    999 F. Supp. 725 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Bell Atlantic Corp. v. Twombly*,
    __ U.S. __, 127 S. Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Berson v. Allied Signal Technology, Inc.*,
    No. 06 Civ. 15454, 2008 U.S. App. LEXIS 11982 (9th Cir. June 5, 2008) . . . . . . . . . 19

*Caiola v. Citibank, N.A.*,
    295 F. 3d 312 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Credit Suisse First Boston Corp. v. ARM Fin. Group, Inc.*,
    No. 99 Civ. 12046 (WHP), 2001 U.S. Dist. LEXIS 3332 (S.D.N.Y. 2001) . . . . . . . . . . 9

*Demaria v. Andersen*,
    318 F. 3d 170 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17

*Feiner v. SS&C Tech.*,
    11 F. Supp. 2d 204 (D. Conn. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21

*Fortis Corp. Ins. v. M/V Cielo Del Can.*,
    320 F. Supp. 2d 95 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ganino v. Citizens Utils. Co.*,
    228 F. 3d 154 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Garber v. Legg Mason, Inc.*,
    537 F. Supp. 2d 597 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Glassman v. Computervision Corp.*,
    90 F. 3d 617 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Goldberg v. Meridor*,
    567 F.2d 209 (2d. Cir 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Goldman v. Belden*,
    754 F. 2d 1059 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Herman & MacLean v. Huddleston,*
    459 U.S. 375 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Apple Computer Sec. Litig.,*
    886 F 2d 1109 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re EVCI Colleges Holding Corp. Sec. Litig.,*
    469 F. Supp. 2d 88 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Independent Energy Holdings PLC Sec. Litig.,*
    154 F. Supp. 2d 741 (S.D.N.Y 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16

*In re Initial Pub. Offering Sec. Litig.,*
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Initial Public Offering Sec. Litig.,*
    358 F. Supp 2d 189 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 18

*In re N2K Inc. Sec Litig,*
    82 F. Supp. 2d 204 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14, 17

*In re NationsMart Corp. Sec. Litig.,*
    130 F. 3d 309 (8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Proxima Corp. Sec. Litig.,*
    No. 03 Civ 1139 (LSP), 1994 U.S. Dist. LEXIS (S.D. Cal. May 3, 1994) . . . . . . . . . . 17

*In re Prudential P'ships Sec. Litig.,*
    930 F. Supp. 68 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Sourcefire, Inc. Sec. Litig.,*
    No. 2008 U.S. Dist. LEXIS (D. Md. Apr. 23, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*In re Suprema Specialties, Inc. Sec Litig.,*
    438 F. 3d 256 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re Turkcell Iletsim Hismetler, A.S. Sec. Litig.,*
    202 F. Supp. 2d 8 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re U.S.A. Classic Sec. Litig.,*
    No. 93 Civ. 667 (JSM), 1995 U.S. Dist. LEXIS 8327 (S.D.N.Y June 19, 1995) . . . . . . 21

*In re Verifone Sec. Litig.*,
    784 F. Supp. 1471 (N.D. Cal. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Klein v. General Nutrition Cos., Inc.*,
    186 F. 3d 338 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Kramer v. Time Warner, Inc.*,
    937 F. 2d 767 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Levinson v. Basic, Inc.*,
    786 F. 2d 741 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lucia v. Prospect Street high Income Portfolio*,
    36 F. 3d 170 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Metromedia Co. v. Fugazy*,
    983 F. 2d 350 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Miles v. Merill Lynch & Co.*,
    471 F. 3d 24 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Milman v. Box Hill Sys. Corp.*,
    72 F. Supp. 2d 220 (S.D.N.Y 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Nanopierce Technologies, Inc. v. Southridge Capital Management LLC*,
    No. 02 Civ. 0767 (LBS), 2003 U.S. LEXIS 21858 (S.D.N.Y. Dec. 4, 2003) . . . . . . . . 14

*Oliver Schools, Inc. v. Foley*,
    930 F.2d 248 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Olkey v. Hyperion 1999 Trust, Inc.*,
    98 F. 3d 2 (2d Cir 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*P. Stolz Family P'ship L.P. v. Daum*,
    355 F. 3d 92 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Panther Partners, Inc. v. Ikanos Communications, Inc.*,
    538 F. Supp. 2d 662 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rombach v. Chang*,
    355 F. 3d 164 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Scheuer v. Rhodes,*
    416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Schoenhaut v. American Sensors, Inc.,*
    986 F. Supp. 785 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*SEC v. Texas Gulf Sulphur,*
    401 F. 2d 833 (2d Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*SEC v. Treadway,*
    430 F. Supp. 2d 293 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Shaw v. Digital Equipment Corp.,*
    82 F. 3d 1194 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Steckman v. Hart Brewing,*
    143 F. 3d 1293 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Steinberg v. PRT Group,*
    88 F. Supp. 2d 294 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Swierkiewicz v. Sorema N.A.,*
    534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Tellabs, Inc. v. Makor Issues & Rights Ltd.,*
    __ U.S. __ , 127 S. Ct. 2499 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*TSC Idus., Inc. v. Northway, Inc.,*
    426 U.S. 438 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Virginia Bankshares, Inc. v. Sandberg,*
    501 U.S. 1083 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Williams v. West Chester,*
    891 F. 2d 458 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Statutes and Rules**

15 U.S.C. §77k(a) (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

17 C.F.R. §229.303(a)(3)(ii) (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

17 C.F.R. §230.408 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

17 C.F.R. §239.11 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Evid. 201(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Evid. 801(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Evid. 802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lead Plaintiffs Esther Lowinger and Chaoxu Zhao ("Plaintiffs" or "Lead Plaintiffs"), by their undersigned attorneys, respectfully submit this memorandum of law in opposition to Defendants' Pzena Investment Management, Inc. (the "Company" or "Pzena"), Richard S. Pzena, Goldman Sachs & Co., Inc. ("Goldman Sachs"), and UBS Securities LLC's ("UBS" and collectively with Goldman Sachs the "Underwriter Defendants") motions to dismiss the Consolidated Amended Complaint (the "Complaint").[1]

## PRELIMINARY STATEMENT

The most important fact relevant to the expected future results of an asset manager such as Pzena is the assets under management ("AUM") which is ultimately the source of all future revenues and income. Here, Pzena, at the time of the initial public offering ("IPO") of its Class A common stock (the "Common Stock") on October 24, 2007 was experiencing material redemptions in the largest asset pool it managed, the John Hancock Classic Value Fund (the "Classic Value Fund"), which had begun on October 1, 2007.

This fact was not disclosed anywhere in the prospectus ("Prospectus") filed as part of the Form S-1 registration statement (the "Registration Statement") used to effectuate the IPO. To the contrary, the Prospectus indicated to anyone reading the document that there existed no problems with investor redemptions. These facts, when finally disclosed to the investing public, therefore, unsurprisingly caused a material decline in the trading price of Pzena's Common Stock.

Defendants, building upon their obfuscation of the true facts in the Prospectus, craft their motions to dismiss by ignoring both critical facts, trying to invent new facts to their liking, and

---

[1]     "Defs. Memo. at ___" refers to the Memorandum of Law in Support of the Pzena Defendants' Motion to Dismiss the Consolidated Amended Complaint. "Und. Memo. at ___" refers to the Underwriter Defendants' Memorandum in Support of Their Motion to Dismiss the Consolidated Amended Complaint. In the interests of brevity, Plaintiffs are filing a single brief in response to the motions.

ignoring governing principles of law including those in well-known regulations promulgated by the Securities and Exchange Commission ("SEC").  Therefore, as discussed below in greater detail, Defendants' motions to dismiss should be denied.

**STATEMENT OF FACTS**

**Pzena**

Pzena is an  investment management firm providing investment advisory services to: funds; high net worth individuals; investment companies; charitable organizations; corporations; state and municipal government entities; pensions and profit sharing plans; and pooled investment vehicles.  Complaint ¶6.  Richard Pzena is the Company's Chairman, Chief Executive Officer, and Co-Chief Investment Officer, and owns 24,728,620 shares of the Company's common stock -- representing 42.7% of the Company's outstanding shares prior to the IPO.  Complaint ¶7.

Pzena earns revenues through management fees and incentive fees, referred to as advisory fees, by managing investment assets.  Complaint ¶18.  Those advisory fees are primarily driven by the level of AUM.  *Id*.  The Company's AUM increases or decreases with the net inflows and outflows of funds into the various investment strategies and with the performance of the investments therein.  *Id*.  Thus, Pzena earns higher fees when it is managing more money and *vice versa*.

A significant portion of the Company's business is generated as a sub-investment advisor to mutual funds managed by other institutions.  Complaint ¶19.  For example, the Company's largest and most substantial sub-investment relationship is with John Hancock Funds, LLC ("John Hancock"), accounting for 19% and 22% of its revenues for the respective six months

ended June 30, 2006 and 2007.  *Id*.  The John Hancock funds are open-ended funds,  meaning that their shareholders can redeem their shares at any time at the quoted net asset value per share. *Id*.

On September 30, 2007, the Company had $28.9 billion of AUM, $12.9 billion of which was classified under sub-advisory relationships, and $8.7 billion of which was held in the Classic Value Fund -- representing approximately 67% of the sub-advised AUM and 30% of the Company's total AUM.  Complaint ¶20.  Thus, the sub-investment advisory agreement with the Classic Value Fund, the largest of those funds, represented nearly all of the Company's revenue from John Hancock during those periods.  Complaint ¶ 19.

**The IPO**

On October 24, 2007, the Company commenced its IPO for 6,100,000 shares of common stock at a price of $18.00 per share for total proceeds of approximately $109,800,000.  Complaint ¶17.  Goldman Sachs and UBS acted as co-lead underwriters for the IPO, with each directly distributing and selling at least 2,135,000 shares of the Common Stock -- resulting in collective underwriting fees of $5,380,200.  Complaint ¶¶8-9.  The IPO was accomplished through the Prospectus filed as part of the Registration Statement with the Securities and Exchange Commission ("SEC").  Complaint ¶17.

**The Prospectus and the Registration Statement Omitted Material Facts**

The Prospectus failed to disclose several material issues with the Company's business which were required to be disclosed.  Missing from the Prospectus was the critical fact that as of October 24, 2007 -- the date of the IPO -- the Company was already experiencing hundreds of millions in dollars in net redemptions in the Classic Value Fund, a trend which began to emerge

on October 1, 2007.  Those redemptions were driven by the ability of individual investors to redeem (or sell) their Classic Value Fund shares at any time because of its status as an open-ended fund.  Complaint ¶¶ 22, 24-25, 28, 31.

Instead of disclosing these facts, the Prospectus obfuscated the actual state of affairs by simply stating that Pzena had experienced a net inflow of $0.4 billion from June 30, 2007 to September 30, 2007, notwithstanding the loss of over $2 billion due to poor investment returns. Complaint ¶23.  Similarly, the Prospectus reported  that the Classic Value Fund had been "re-opened . . . primarily as a result of the growth in [its] respective investable universes." Complaint ¶21. These statements were materially misleading because, in truth and in fact, the Classic Value Fund, the largest pool of assets managed by Pzena, was experiencing a trend of massive redemptions which was at least one more reason for re-opening the fund to new investors.  Complaint ¶22.

**Post-IPO Disclosures**

On November 16, 2007 -- approximately three weeks after the IPO closed -- *Reuters* carried a story on its newswire service disclosing that the Classic Value Fund was running $2 billion less in sales than it did in the prior year and that the fund had been reopened on October 1, 2007 (more than three weeks prior to the IPO), because it had fallen into net redemptions. Complaint ¶25.  More specifically, Keith Hartstein, president of John Hancock Funds, stated in the *Reuters* article that the fund was "reopened [on] October 1 because the fund had fallen into net redemptions" and that "[r]eopening [the fund] has helped a little.  Sales have picked up a bit, but it's still in significant net redemptions. . . *Actually since October 1, it has been running at about $20 million a day in redemptions*."  Complaint ¶25 (emphasis added).  A similar article

appeared again in *Reuters* on November 30, 2008.  Complaint ¶26.  Thus, in the three weeks preceding the IPO, the fund had already experienced more than $300,000,000 in redemptions.  Complaint ¶¶25-26.

On January 10, 2008, the Company announced that its AUM as of December 31, 2007 had fallen by 13%, from $27.3 billion a year earlier to $23.7 billion.  Complaint ¶27.  The vast majority of the decrease in AUM was in the sub-advised accounts which had declined by $3.3 billion.  *Id*.  These announcements were followed by several others which all disclosed that the Company's AUM had fallen dramatically.  Complaint ¶¶29-30.

In response to these announcements, the price of the Company's common stock fell precipitously from its IPO price of $18.00 per share.  Complaint ¶27.  On November 21, 2008 -- the day the first complaint was filed against Pzena -- the Company's common stock hit an intra-day low of $12.25 per share.

## ARGUMENT

In reviewing a motion to dismiss, the Court must presume that the allegations of the Complaint are true, read as a whole, and with the Plaintiffs given the benefit of every favorable inference that can be drawn from its allegations.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  Furthermore, a complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but rather must simply provide the grounds of entitlement to relief and raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1959 (2007) (citations omitted).

# I.   PLAINTIFFS STATE A CLAIM FOR VIOLATION OF SECTION 11 OF THE SECURITIES ACT

"Section 11 of the Securities Act . . . imposes liability when companies offering their shares to the public fail to provide required information, or include misleading statements, in their registration statements." *Milman v. Box Hill Sys. Corp.*, 72 F. Supp. 2d 220, 227 (S.D.N.Y. 1999). Section 11 "was designed to assure compliance with the disclosure provisions of the [Securities] Act by imposing a stringent standard of liability. . . . [l]iability against the issuer of a security is virtually absolute, even for innocent misstatements." *Herman & MacLean v. Huddleston,* 459 U.S. 375, 381-82 (1983).

## A.   Section 11 Claims Are Only Subject to Notice Pleading Standards

Sections 11 does not require pleading or proof that a defendant acted with intent to defraud or even knew that misrepresentations or omissions had been made. *See, e.g., Metromedia Co. v. Fugazy*, 983 F.2d 350, 361 (2d. Cir. 1992) (even "seemingly innocuous" statements may violate the Securities Act). Therefore, Section 11 is limited in scope, it places a relatively minimal pleading burden on the plaintiff, which is set forth in Fed. R. Civ. P. 8(a). *Rombach v. Chang*, 355 F.3d 164, 169 n.4 (2d Cir. 2004). *See also*, *In re Initial Pub. Offering Sec. Litig. ("IPO")*, 241 F. Supp. 2d 281, 342 (S.D.N.Y. 2003) (a simply-pled Section 11 claim will satisfy Rule 8(a), "just as the half page model complaints in the Appendix to the Federal Rules of Civil Procedure satisfy the pleading requirements of the Federal Rules").

Rule 8(a) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). A complaint is sufficient if it gives "fair notice of what the plaintiff's claim is and the ground upon which it

rests." *Id.*; *see also*, *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 315-16 (8th Cir. 1997) (Section 11 only required Rule 8 notice pleading).

### B. Defendants Were Required to Disclose the Decline in Pzena's AUM in the Registration Statement

Defendants seek dismissal of Plaintiffs' claims by seeking to negate both the materiality of the underlying facts relating to the existing fact of material withdrawals from the Classic Value Fund and the requirement that those facts be disclosed in the Registration Statement. Defendants' arguments are based on the assertions that: the Registration Statement made all the disclosures required by governing SEC's regulations; the facts concerning the Classic Value Fund outflows were rendered immaterial by warnings that AUM might decline; and the facts relating to the decline in Pzena's AUM were already well-known by investors. Defendants are in error on all points.

### 1. Plaintiffs Have Properly Pleaded the Materiality of the Facts Relating to the Decline in Pzena's AUM

Defendants seek to negate the materiality of the outflows from the Classic Value Fund and resulting decline in Pzena's AUM by arguing that it is but one account among many that Pzena was managing. Defs. Memo. at 14. However, what Defendants neglect to mention, or seek to obscure, is that the Classic Value Fund standing alone accounted for ***over 30% of the Company's AUM***. Complaint ¶20.

Given the importance of the Classic Value Fund to the Company's results, the facts relating to a dramatic increase in net withdrawals was something "a reasonable investor would have considered significant in making investment decisions." *IPO*, 358 F. Supp. 2d 189, 210 (S.D.N.Y. 2004); *accord, In re Independent Energy Holdings PLC Sec. Litig.*, 154 F. Supp. 2d

741, 760 (S.D.N.Y. 2001) (failure to disclose a governmental investigation of a business which accounted for 40% of the company's customer base was material because the securities laws required disclosure of information that would permit investors to appreciate the future risks posed to the company). *See also*, *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (facts are material where there is "a substantial likelihood that the disclosure . . . would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."). Indeed, it is difficult to imagine a fact more significant to a decision to invest in a money manager that earns its fees based upon AUM.

However, notwithstanding the compelling case for the materiality of the Classic Value Fund outflows, it is not Plaintiffs' burden to establish materiality at this pleading stage of the litigation. Instead, Plaintiffs' claims could only be dismissed if Defendants are able to prove that the facts relating to the outflows "'are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'" *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)). Here, this is a standard which Defendants have not met.

**2.    The Materiality of Defendants Failure to Disclose the Outflows of AUM Was Not Negated by Other Information Available to Investors**

Instead of focusing on the objective materiality of the Classic Value Fund outflows, Defendants seek to assert that the failure to disclose those facts was immaterial as a matter of law because of: (a) risk disclosures contained in the Registration Statement; and (b) information publicly available to investors from other sources. Defendants are in error on both points.

a.     **The Risk Factors in the Registration Statement do Not Negate the Materiality of Defendants Failure to Disclose**

Defendants claim that Plaintiffs and other purchasers of Pzena's stock could not possibly have been misled because the Registration Statement is replete with warnings that the AUM might decline.  Defs. Memo. at 14-15.  However, rather than negating the materiality of the failure to disclose the outflows, warning of a risk that something *might* happen when, in fact, the events had ***already happened***, is itself materially misleading.  *Accord, In re EVCI Colleges Holding Corp. Sec. Litig.*, 469 F. Supp. 2d 88, 102-03 (S.D.N.Y. 2006) (misleading disclosure adequately plead where plaintiffs alleged that defendants failed to warn that the risk factors were not hypothetical).

In circumstances such as these, as the late Judge Pollack observed: risk disclosures provide "no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away."  *In re Prudential P'ships Sec. Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996).  Instead, "even apparently specific risk disclosures . . . like those in [the] prospectus are misleading if the risks are professionally stamped in internal undisclosed analyses (as they were here) as significantly greater or more certain than those portrayed in the prospectus."  *Id.*[2] (citing *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1115 (9th Cir. 1989), *cert. denied*, 496 U.S. 943 (1990) ("There is a difference between knowing that any product in development may run into a

---

[2]     *Prudential* addressed the "bespeaks caution" doctrine which involves the adequate disclosure of risks concerning possible adverse future events.  *See*, *e.g.*, *Credit Suisse First Boston Corp. v. ARM Fin. Group, Inc.*, No. 99 Civ. 12046 (WHP), 2001 U.S. Dist. LEXIS 3332 at *14-15 (S.D.N.Y. Mar. 28, 2001)

few snags and knowing that a particular product has already developed problems . . . .")).  *See also*, *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 97 (2d Cir. 2004).[3]

*Olkey v. Hyperion 1999 Trust, Inc.*, 98 F.3d 2 (2d Cir. 1996), the primary case Defendants rely upon, is inapposite to the case at bar.  In *Olkey*, the undisclosed facts related to the expected future performance of a closed-end mutual fund in which all the relevant risks relating to that future performance were disclosed.  *Id*. at 5.  Here, in contrast, ***existing facts*** concerning Pzena's performance were omitted from the Registration Statement.

> **b.     Defendants Efforts to Establish Market Knowledge of the Material Undisclosed Facts Also Fails**

Defendants also assert that notwithstanding their failure to disclose, the Classic Value Fund outflows were immaterial as a matter of law because: (1) the poor performance of the Classic Value Fund was well-known by investors; and (2) monthly reports issued by Morningstar (a service tracking mutual funds) and certain other information available on the Yahoo! Finance Internet site disclosed a decline in the total amount of money invested in the Classic Value Fund. Defs. Memo. at 16.  Defendants' argument lacks merit.

The relatively poor performance of the Classic Value Fund was public knowledge. However, that fact provided investors with no information concerning withdrawals being experienced by the Classic Value Fund.  To the contrary, the statements in the Registration

---

[3]     *In re N2K Inc. Sec. Litig.*, 82 F. Supp. 2d 204 (S.D.N.Y.1999), *aff'd*, 202 F.3d 81 (2d Cir. 2000), cited by Defendants, is distinguishable because the undisclosed results at issue did not represent a departure from previously reported losses.  82 F. Supp. 2d 204 at  208.  Here, in contrast, the outflows represented a departure from the previous quarter's reported results of net inflows notwithstanding a decline Pzena's management performance.  *Steinberg v. PRT Group*, 88 F. Supp. 2d 294, 304 (S.D.N.Y. 2000), cited by Defendants, involved an attempt by the plaintiff to extrapolate a statement that did not exist in the prospectus, to wit, that the company had been able to leverage its preferred vendor relationship into increased business.

Statement would have given investors every reason to believe that no such massive withdrawals were occurring notwithstanding the weak investment returns. Indeed, the Registration Statement stated that despite the poor returns in the prior fiscal quarter ended September 30, 2007, Pzena experienced net inflows of $400 million even after accounting for AUM lost due to poor investment performance. Complaint ¶23.

Defendants' reference to the Morningstar and Yahoo! Finance data is even more curious. No documents evidencing the form of these purported reports are placed before the Court with Pzena's counsel instead seeking to place this matter into the record by the information he "believe[s]" is contained in those reports and when those reports would "typically" be made publicly available. *See* Affidavit of Brian H. Polovoy (Docket No. 24) at ¶4.

Counsel's belief, however, is not admissible in this action. *Accord, Williams v. West Chester*, 891 F.2d 458, 470 (3d Cir. 1989) ("Facts made of personal knowledge are admissible. Beliefs, no matter how sincere, are not."). Instead, it is hearsay because it "is a statement . . . offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). As such, the statement and all of Defendants' arguments based upon that statement are inadmissible. Fed. R. Evid. 802; *accord,* Fed. R. Civ. P. 56(e) (facts in affidavit are only admissible if "the affiant is competent to testify to the matters stated therein.")

Moreover, even if Defendants had properly presented a document or report for the Court's (and Plaintiffs') review, it is highly doubtful the Court could take that document into account on a motion to dismiss. In order for the Court to take account of documents outside the Complaint, they must be subject to judicial notice under Rule 201 of the Federal Rules of Evidence. *Accord, Tellabs, Inc. v. Makor Issues & Rights Ltd.*, __ U.S. __, 127 S. Ct. 2499,

-11-

2509 (2007). Judicial notice can only take place where the facts are "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Generally it has been applied to SEC filings and matters reported in widely read publications. *See, e.g.*, *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Here, however, Defendants have not satisfied either element of the test by pointing to the alleged past existence of a purported relatively obscure Internet reports. *Accord*, *Fortis Corp. Ins. v. M/V Cielo Del Can.*, 320 F. Supp. 2d 95, 98 (S.D.N.Y. 2004) (court declined to take judicial notice of current website as controlling evidence of facts that existed in the past).

Even assuming *arguendo* that the reports Defendants refer to exist and actually contain the information claimed, it would make no difference. The stream of withdrawals from the Classic Value Fund are alleged to have commenced on October 1, 2007. Complaint ¶25. Therefore, any report for the month of September 2007 would not have revealed any of the relevant information. The report for the month of October 2007, even according to Defendants' current description would not have been available until early November while the IPO was completed on October 24, 2007 -- in fact, perfect timing to avoid this purported report from being analyzed by the investing public.

Finally, Defendants have failed to demonstrate that the information contained in the purported reports were in a form that investors could easily understand that the Classic Value Fund was experiencing massive withdrawals as opposed to a decline in assets occasioned by poor performance. Absent such clarity in the reports, it could not constitute full disclosure of the underlying facts. *Cf.*, *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1097 (1991)

-12-

(disclosure is inadequate if it would take the skill of a financial analyst to discern the meaning of the data).

*Klein v. General Nutrition Cos., Inc.*, 186 F.3d 338 (3d Cir. 1999), the leading case cited by Defendants, is not on point. There, a Vitamin E shortage was public knowledge. *Id.* at 342. Here, in contrast, no one aside from Pzena (and John Hancock) knew at the time of the IPO that the Classic Value Fund was experiencing massive withdrawals. Moreover, *Klein* was a case which the underlying securities were alleged to have traded in an efficient market meaning that publicly available information was at all times assumed to be reflected in the company's stock price. *Id.* at 343. In contrast, this action relates to an IPO, a circumstance in which it is highly questionable whether the presumption of an efficient market applies. *Accord*, *Miles v. Merrill Lynch & Co.*, 471 F.3d 24, 42-43 (2d Cir. 2007) ("the market for IPO shares is not efficient.")

 3.    **Defendants Were Obligated to Disclose the Material Facts Relating to the Classic Value Fund Outflows in the Registration Statement**

Defendants also assert that even if the facts relating to the outflows were material, they still had no obligation to disclose those facts because they complied with all the disclosures required by the SEC's instructions in Form S-1, the registration form used by Pzena in connection with the IPO. Defs. Memo. at 9-11. Defendants are in error because: (a) their disclosure obligations were not limited by the itemized disclosures of Form S-1; and (b) they even failed to comply with those disclosure obligations.

 a.    **Defendants Disclosure Obligations Were Not limited by the Itemized Instructions in the Form S-1 Registration Statement**

Omissions are actionable under Section 11 either when a registration statement omits to "[1] state a material fact required to be stated therein or [2] necessary to make the statements

-13-

therein not misleading." 15 U.S.C. §77k(a) (2008).[4] Thus, although the first category of

actionable omissions relates to disclosures required by SEC regulations, the latter category

clearly exists independent of any obligation in SEC regulations or in other provisions of the

Securities Act to disclose facts in a registration statement.

Given the clarity of the statutory scheme, it comes as no surprise that Defendants have

difficulty mustering cases supporting their position. *In re N2K Inc. Sec. Litig.*, 82 F. Supp. 2d

204, a leading case cited by Defendants, actually holds that "a material omission from a

registration statement is actionable if the omitted facts (1) were required by SEC regulations to

be stated therein, or (2) ***were necessary to make the disclosures in the registration statement***

***not misleading***." *Id*. at 207 (emphasis added); *accord, Nanopierce Technologies, Inc. v.*

*Southridge Capital Management LLC*, No. 02 Civ. 0767 (LBS), 2003 U.S. Dist. LEXIS 21858, at

*12-15 (S.D.N.Y. Dec. 4, 2003) (court must determine whether information not covered by SEC

regulations still must be disclosed in light of prior information that was disclosed).[5]

---

[4]        Omissions of material fact are actionable even if the underlying statement is true.
*Levinson v. Basic, Inc.*, 786 F.2d 741, 746 (6th Cir. 1986), *vacated on other grounds*, 485 U.S.
224 (1988) (quoting *SEC v. Texas Gulf Sulphur*, 401 F.2d 833, 862 (2d Cir. 1968), *cert. denied*,
394 U.S. 976 (1969)).  Indeed, as even Defendants' authorities recognize, this Circuit recognizes
that the "inquiry does not focus on whether 'particular statements, taken separately, were literally
true, but whether defendants' representations, taken together and in context, would have misled a
reasonable investor . . . ." *Demaria v. Andersen*, 318 F.3d 170, 180 (2d Cir. 2003) (citations
omitted).

[5]        The observation made in *Panther Partners, Inc. v. Ikanos Communications, Inc.*,
538 F. Supp. 2d 662 (S.D.N.Y 2008), cited by Defendants, that the duty to disclose "depends
largely" (*id*. at 668) on the SEC's itemized disclosures was made in the context of that case
which the court held dealt with failures to disclose "future business and technical conditions,
events that were either unknown or unknowable at the time of the disclosures." *Id*. at 664.

However, even without the clear nature of the statutory command, it would make no difference if a violation of SEC regulations were a prerequisite to a valid Section 11 claim. Securities Act Rule 408 replicates the statutory requirements of Section 11 by providing that:

> In addition to the information expressly required to be included in a registration statement, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made, not misleading.

17 C.F.R. §230.408 (2008). *Accord*, *DeMaria*, 318 F.3d at 180.

Here, the Registration Statement violated Rule 408 (and Section 11) by making statements leading potential investors to believe that notwithstanding Pzena's recent disappointing investment performance, that the funds managed, including the Classic Value Fund, had not yet experienced massive withdrawals. Thus, the poor investment returns for the fiscal quarter ended September 30, 2007 were disclosed with the caveat that notwithstanding that poor performance of its funds, Pzena experienced net inflows. Complaint ¶23. Instead, the potential withdrawal of AUM by dissatisfied investors, and particularly those in the Fund, was represented as nothing other than a risk of what could happen in the future. *See* Prospectus at 16 (the Company "***could . . . suffer a decline in asset under management which would impair our earnings.***") (emphasis in original).[6]

Similarly, the re-opening of the investment strategies was not tied to the stream of redemptions and was, instead, attributed to an expansion in the investable universe of assets. Complaint ¶¶21-22. Defendants assertion that John Hancock was responsible for re-opening the

---

[6]    As Defendants correctly observe (*see* Defs. Memo. at 8), this Court may consider all portions of the Prospectus in resolving a motion to dismiss even where the Complaint does not quote the relevant passages.

Classic Value Fund is a factual assertion which cannot be proven at this stage of the litigation. *Accord, Feiner v. SS&C Tech.*, 11 F. Supp. 2d 204, 209 n.6 (D. Conn. 1998) ("the defendants necessarily rely on 'facts' outside the pleadings in support of this argument."). Also, even if true, a discussion of the re-opening of the Classic Value Fund to new investors would normally trigger a duty to disclose the then recent flow of redemptions. *Accord, Caiola v. Citibank, N.A.*, 295 F.3d 312, 331 (2d Cir. 2002) ("upon choosing to speak, one must speak truthfully about material issues."); *Lucia v. Prospect Street High Income Portfolio*, 36 F.3d 170, 175 (1st Cir. 1994) ("when a corporation does make a disclosure--whether it be voluntary or required--there is a duty to make it complete and accurate.") (citation omitted).

The massive withdrawals from the Fund were no mere hypothetical risk, but, instead, an actually ***existing fact*** ongoing since at least October 1, 2007. Complaint ¶25. Therefore, the portrayal of these facts in the Prospectus was materially misleading because they hid the relevant fact that outflows had been ongoing and material. *Accord*, *Independent Energy*, 154 F. Supp. 2d at 760.

Nor is there any merit to Defendants' assertion that the facts relating to the outflows did not have to be disclosed because they were only interim quarterly results. Defs. Memo. at 13-14. To the contrary, the failure to disclose interim data can serve as the basis for a Securities Act claim. *See*, *e.g.*, *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1206 (1st Cir. 1996) (interim quarterly information concerning a company's operating experience is subject to disclosure before the end of the quarter when "the non-disclosure of interim facts render[] the prospectus materially incomplete."); *In re Sourcefire, Inc. Sec. Litig.*, No. 07 Civ. 1210 (JFM), 2008 U.S. Dist. LEXIS 33448 at *11-13 (D. Md. Apr. 23, 2008) (plaintiffs allegations that defendants

-16-

omitted mid-quarter financial information stated a claim); *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 999 F. Supp. 725, 728 (S.D.N.Y. 1998) (motion to dismiss denied where plaintiffs alleged that financial losses existed at the time of the offering).[7]

The key issue is whether the interim data is at odds with previously reported information which portrays a different picture of a company's operations than that disclosed in the Registration Statement. *Cf.*, *Demaria*, 318 F.3d at 182; *Turkcell*, 292 F. Supp. 2d at 12. Indeed, even the cases cited by Defendants acknowledge that a claim is stated where the defendants "failed to include in its prospectus facts then-known that indicated the company was in a 'period of severe adversity.'" *N2K Sec. Litig.*, 82 F. Supp. 2d at 208 n.8 (citing *In re Proxima Corp. Sec. Litig.*, No. 03 Civ 1139 (LSP), 1994 U.S. Dist. LEXIS 21443, *3 (S.D. Cal. May 3, 1994)).

Here, that is what happened as the outflows from October 1, 2007 (the first day after the September 30, 2007 date of the reports contained in the Registration Statement) through October 24, 2007 (the day of the IPO) were completely at odds with the misleading claim of net inflows even in the face of poor investment returns. *See* Complaint ¶¶23-25. The undisclosed information, therefore, was completely at odds with the representations made in the Registration Statement by Defendants and represented a severe adverse trend in the Company's AUM.

---

[7]     Defendants remaining authorities are not to the contrary. *Glassman v. Computervision Corp.*, 90 F.3d 617 (1st Cir. 1996), cited by Defendants, was only dismissed after the close of discovery. *Sourcefire*, at *12 n.4. Moreover, there were no facts to "infer[ ] that as of the offering date [the company] had hard mid-quarter results . . . ." *Id.* (quoting *Glassman*, 90 F.3d at 621-22). *In re Turkcell Iletsim Hismetler, A.S. Sec. Litig.*, 202 F. Supp. 2d 8 (S.D.N.Y. 2001), cited by Defendants, sustained claims relating to a failure to disclose churn rates (*id.* at 12) which is analogous to the failure to disclose the decline in AUM at issue in this action. The claims in *Turkcell* which were dismissed sought disclosure of financial data in direct contravention of SEC rules governing disclosure of that information. *Id.*

### b.    The Registration Statement Also Failed to Make the Itemized Disclosures Required by SEC Regulations

The Form S-1 Registration Statement utilized by Pzena, among other things, requires that the issuer (*i.e.*, Pzena) provide the disclosures required by Item 303 of Regulation S-K.  *See* Form S-1, Item 11(h), 17 C.F.R. §239.11 (2008).  Item 303, in turn, requires that a registration statement "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Item 303(a)(3), 17 C.F.R. § 229.303(a)(3)(ii) (2008).[8]

Item 303 creates a duty to disclose where it is necessary to make prior statements not misleading.  *Accord,  SEC v. Treadway*, 430 F. Supp. 2d 293, 327 (S.D.N.Y. 2006) ("One circumstance creating a duty to disclose arises when disclosure is necessary to make prior statements not misleading") (citation omitted).  The disclosure mandated by Item 303 is required "unless management determines that a material effect on the registrant's financial condition or results is not reasonably likely to occur."  *Management's Discussion and Analysis of Financial Condition and Results of Operations*, SEC Release Nos. 33-6835, 34-26831, 1989 SEC LEXIS 1011, at *19 (May 18, 1989).

Here, Defendants must have known the facts relating to the increasing redemptions in the Classic Value Fund beginning on October 1, 2007.  The Classic Value Fund was an open-ended mutual fund with orders of redemption communicated directly to fund managers since the shares

---

[8]        It is settled law that a failure to disclose the information required by Item 303 subject them to Section 11 liability.  *See, e.g., Steckman v. Hart Brewing*, 143 F.3d 1293, 1296 (9th Cir. 1998) ("Form S-1 . . . requires the registrant to follow Item 303 . . . Therefore, any omission of facts 'required to be stated' under Item 303 will produce liability under Section 11"); *Shaw*, 82 F.3d at 1205 (a registrant using Form S-1 must independently furnish in the prospectus the information required by Item 303 of Regulation S-K); *IPO*, 358 F. Supp 2d at 211.

are sold back to the fund itself. The facts relating to the amount of money being managed by a mutual fund is so key to its operations that it is inconceivable that Pzena as the Classic Value Fund's sub-adviser did not know of these facts.[9]

Nor can Defendants reasonably claim that trends in AUM would not have a material impact of Pzena's expected results. Indeed, to the contrary, the Prospectus states quite clearly, in the risk factor disclosures section, that AUM was significant and particularly that of the Fund. *See* Prospectus at 16-17.

*Schoenhaut v. American Sensors, Inc.*, 986 F. Supp. 785 (S.D.N.Y. 1997), discussed at length by Defendants, is not on point as it fails to discuss the implications of either Item 303 (or Rule 408) on the duty to disclose the relevant facts. Also, in *Schoenhaut* there had been no disclosure of the trend of sales from the customer at issue while here, in contrast, there was an explicit disclosure concerning the percentage and trend in AUM the Company derived from its relationship as a sub-investment adviser for John Hancock. *See* Prospectus at 17 ("For the years ended December 31, 2004, 2005 and 2006 and the six months ended June 30, 2006 and 2007, approximately 8%, 14%, 20%, 19% and 22%, respectively, of our total revenue was generated from [the John Hancock relationship]. Our sub-investment advisory agreement with the John Hancock Classic Value Fund represented all, or substantially all, of this revenue during these periods.")

*Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597 (S.D.N.Y. 2008), the other case from this District which Defendants rely upon (*see* Defs. Memo. at 12-13 n.4), is also not on point. In *Garber*, the plaintiff "allege[d] no facts regarding the volume of customer withdrawals . . .at the

---

[9]        *Accord*, *Berson v. Allied Signal Technology, Inc.*, No. 06 Civ. 15454, 2008 U.S. App. LEXIS 11982 (9th Cir. June 5, 2008).

-19-

time of the Secondary Offering." *Id*. at 613.  Here, in contrast, the level of withdrawals from the

Fund and their impact on Pzena are specifically alleged.  *See* Complaint ¶¶26-27.[10]

## II.    PLAINTIFFS PROPERLY STATE A CLAIM FOR RELIEF PURSUANT TO SECTION 12(a)(2) OF THE SECURITIES ACT

The Underwriter Defendants seek dismissal of the Section 12(a)(2) claims arguing that

they fail identify a material misstatement or omission of fact.  For the reasons set forth in Point I

above, this argument lacks merit.

The Underwriter Defendants also argue that plaintiff Chaoxu Zhao lacks standing to bring

the Section 12(a)(2) claims because she purchased her shares of Pzena on October 25, 2007, the

day after the IPO (*i.e.,* October 24, 2007) from a private party.  Und. Memo. at 1-2.  As an initial

matter, Plaintiffs note that this does not affect plaintiff Lowinger's standing to bring the claims.

*See, e.g.*, *In re American Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 435-35

(S.D.N.Y. 2000) (even where three lead plaintiffs purchased shares in the aftermarket, because

co-lead plaintiffs shared directly in the IPO, the plaintiff class had standing to sue pursuant to

Section 12(a)(2)).

However, even with respect to plaintiff Chaoxu Zhao, the Underwriter defendants are in

error.  The cases the Underwriter Defendants rely upon do not go so far as to call shares

purchased the day after the commencement of an IPO, the equivalent of a private purchase.  The

Underwriter Defendants rely upon *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995), and cases citing

to it, for the proposition that standing under Section 12(a)(2) is reserved for persons who

---

[10]      *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1484 (N.D. Cal. 1992), cited by
Defendants, is also not on point.  There, the only facts disclosed was a list of past and current
customer.  *Id.*  Here, in contrast, Defendants misleadingly present a ever increasing string of
revenue from the Classic Value Fund without revealing that the fund had, in fact, fallen into net
redemptions.  *See* Prospectus at 17.

acquired share is the IPO.  *Id.* at 576.  However, they distort the cited *dicta* of *Gustafson* by arguing that it therefore disavows plaintiff Zhao's standing.  *Gustafson* dealt with the question of whether Section 12(a)(2)'s remedy of recission extended to a private, secondary transaction on the theory that a purchase agreement is part of a 'prospectus.'  *Id.* at 564.  "In *Gustafson*, the Court was drawing a distinction between public offerings and private ones, not between public offerings and aftermarket purchases."  *Feiner v. SS&C Techs., Inc.*, 47 F. Supp. 2d 250, 252 (D. Conn. 1999).  An aftermarket purchase that occurs "by means of a prospectus or oral communication" can provide grounds for Section 12(a)(2) standing.  *Id.* at 253.

There is nothing in the Complaint to support the Underwriter Defendants' argument that plaintiff Zhao acquired his or her shares in a private, secondary sale, and not pursuant or traceable to the prospectus.  However, at this early stage in the litigation, nothing additional needs to be alleged.  *See In re Suprema Specialties, Inc. Sec. Litig.,* 438 F.3d 256, 274 (3d Cir. 2006) ("Similarly, Section 12(a)(2) claims concern the purchase of securities pursuant to a materially false or misleading prospectus or oral communication. We have recognized that the language of Section 12(a)(2) should not be expanded to aftermarket trading. . . At the pleading stage, however, we accept as true plaintiffs' allegations that they made their stock purchases in or traceable to the Suprema public offerings.") (internal citations omitted)); *Schoenaut*, 986 F. Supp. at 789 (standing under 12(a)(2) adequately alleged because "plaintiffs have alleged that they purchased securities 'pursuant to or traceable to' a public offering"); *In re U.S.A. Classic Sec. Litig.*, No. 93 Civ. 667 (JSM), 1995 U.S. Dist. LEXIS 8327 (S.D.N.Y. June 19, 1995) (same).

**III.   IF THE COURT DETERMINES THAT ANY ASPECT OF THE COMPLAINT IS INADEQUATELY PLED, LEAVE TO AMEND SHOULD BE GRANTED**

Plaintiffs respectfully request leave to amend should the Court find any aspect of Plaintiffs' claims to be inadequately pled.  The Second Circuit has held that "[w]here the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted *as a matter of course.*"  *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991) (emphasis added).  *See also Goldberg v. Meridor*, 567 F.2d 209, 213 (2d. Cir 1977) (where "nothing had yet been said by the defendant or the judge concerning the alleged inadequacy of his pleadings of the federal claim," the plainitff's request for leave to amend after dismissal "[i]n every real sense . . . thus was seeking a second round, not a third"), *cert denied*, 434 U.S. 1069 (1978).

-22-

## CONCLUSION

Therefore, for all the reasons stated above, Defendants' motions to dismiss should be denied in their entirety or in the alternative Plaintiffs should be allowed to amend.

Dated: July 7, 2008

ABRAHAM, FRUCHTER & TWERSKY, LLP

_____/s/ Jeffrey S. Abraham_____
Jeffrey S. Abraham
Philip T. Taylor
One Penn Plaza, Suite 2805
New York, New York 10119
Tel: (212) 279-5050
Fax: (212) 279-3655

COHEN, MILSTEIN, HAUSFELD
   & TOLL, P.L.L.C.
Steven J. Toll
Avi S. Garbow
Jason M. Leviton
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

Co-Lead Counsel for Plaintiffs

-23-