```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ESTHER LOWINGER,                                            :
                                                            :   Master File No. 07 CV 10524 (AKH)
                                Plaintiff,                  :
                                                            :
                v.                                          :
                                                            :
PZENA INVESTMENT MANAGEMENT,                                :
INC., et al.,                                               :
                                                            :
                                Defendants.                 :
                                                            :
------------------------------------------------------------x
```

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
# THE PZENA DEFENDANTS' MOTION TO DISMISS
# <u>THE CONSOLIDATED AMENDED COMPLAINT</u>

Brian H. Polovoy
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
bpolovoy@shearman.com

Attorneys for Defendants
Pzena Investment Management, Inc.
and Richard S. Pzena

## TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 3 |
|     PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 11 OF THE SECURITIES ACT OF 1933 | 4 |
|     A.  Alleged Misstatement 1 --- Describing Pzena's Decline in Assets Under Management --- Was Neither False Nor Misleading | 4 |
|     B.  Alleged Misstatement 2 --- The Reason for the Reopening of Pzena's Investment Strategies --- Was Neither False Nor Misleading | 11 |
|     C.  Plaintiffs' Request for Leave To Amend Should Be Denied | 13 |
| CONCLUSION | 13 |

## TABLE OF AUTHORITIES

Baffa v. Donaldson, Lufkin & Jenrette, 999 F. Supp. 725 (S.D.N.Y. 1998) ...................... 10

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007) ........................................................... 3

Bellikof v. Eaton Vance Corp., 481 F.3d 110 (2d Cir. 2007) ............................................. 12

In re Elevator Antitrust Litig., 502 F.3d 47 (2d Cir. 2007) .................................................. 3

Fin. Acquisition Partners LP v. Blackwell, 440 F.3d 278 (5th Cir. 2006) ........................ 13

Garber v. Legg Mason, Inc., 537 F. Supp. 2d 597 (S.D.N.Y. 2008) ........................... 6, 7, 8

Glassman v. Computervision Corp., 90 F.3d 617 (1st Cir. 1996) ....................................... 9

In re Initial Public Offering Sec. Litig., 358 F. Supp. 2d 189 (S.D.N.Y. 2004) ............... 5, 6

Klein v. Gen. Nutrition Co., 186 F.3d 338 (3d Cir. 1999) ................................................... 2

Lowinger v. Johnson, No. 05 CV 316, 2007 WL 2344882 (W.D.N.C. Aug. 16,
    2007) ............................................................................................................................. 5

In re N2K, Inc. Sec. Litig., 82 F. Supp. 2d 204 (S.D.N.Y. 2000),
    aff'd, 202 F.3d 81 (2d Cir. 2000) ................................................................................. 5

Panther Partners, Inc. v. Ikanos Commc'ns, Inc., 538 F. Supp. 2d 662 (S.D.N.Y.
    2008), recons. denied, 2008 WL 2414047 (S.D.N.Y July 12, 2008) ............ 4, 5, 6, 7

Schoenhaut v. American Sensors, Inc., 986 F. Supp. 785 (S.D.N.Y. 1997) ............. 6, 7, 8, 9

Shaw v. Digital Equip. Corp., 82 F.3d 1194 (1st Cir. 1996) .......................................... 9, 10

In re Sofamor Danek Group, Inc., 123 F.3d 394 (6th Cir. 1997) ........................................ 6

In re Sourcefire, Inc. Sec. Litig., No. 07-1210, 2008 WL 1827484
    (D. Md. Apr. 23, 2008) ............................................................................................... 10

In re Turkcell Iletsim Hismetler, A.S. Sec. Litig., 202 F. Supp. 2d 8
    (S.D.N.Y. 2001) ............................................................................................... 9, 10, 11

In re Verifone Sec. Litig., 784 F. Supp. 1471 (N.D. Cal. 1992), aff'd, 11 F.3d 865
    (9th Cir. 1993) ...................................................................................................... 6, 7, 8

In re Worldspace Sec. Litig., No. 07 CV 2252, 2008 WL 2856519
    (S.D.N.Y. July 21, 2008) ............................................................................................ 10

Defendants Pzena Investment Management, Inc. and Richard S. Pzena respectfully submit this reply memorandum of law in further support of their motion to dismiss plaintiffs' Consolidated Amended Class Action Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This memorandum replies to plaintiffs' July 7, 2008 opposition brief ("Pl. Br.") (Dkt. No. 26).

## PRELIMINARY STATEMENT

The Amended Complaint challenges two disclosures in Pzena's October 24, 2007 Prospectus: (1) Pzena's statement that a decline in its assets under management in the quarter ending September 30, 2007 was "due to approximately $2.1 billion of market depreciation, which was partially offset by $0.4 billion of net inflows;" and (2) Pzena's statement that it had recently reopened five of its investment strategies "primarily as a result of the growth in their respective investable universes." The Amended Complaint alleges that these disclosures were materially false or misleading because Pzena did not state in the Prospectus that the John Hancock Classic Value Fund was experiencing net redemptions during the quarter ended September 30, 2007 and during the quarter in progress on October 24, 2007, the date of the IPO.

Plaintiffs' opposition brief, however, limits their claim, stating that "[t]he stream of withdrawals from the Classic Value Fund are [sic] alleged to have commenced on October 1, 2007." (Pl. Br. at 12.). Thus, this case is now about whether defendants had an obligation on October 24, 2007 to disclose that from October 1, 2007 to October 23, 2007, *i.e.*, in the 23 days immediately preceding the effective date of the Prospectus, one Pzena account was experiencing net outflows.[1]

---

[1] Plaintiffs spend pages arguing that the Court should not consider the fact that the net asset flows of the John Hancock Classic Value Fund were a matter of public knowledge when

Plaintiffs' attempt to salvage their remaining claim is wholly without merit. Pzena had no duty to disclose the net inflows or outflows from the John Hancock Classic Value Fund at any time, let alone to disclose incomplete financial data for the first 23 days of a fiscal quarter in progress. Under settled law, the relevant SEC regulations answer the question as to what material facts are required to be stated in an issuer's registration statement and prospectus. Nothing in the applicable SEC regulations required Pzena to itemize the performance of its clients' accounts. Indeed, as a matter of law, this information was not required. The asset flows of one account in the 23 days immediately preceding the IPO would not and could not have "significantly altered the total mix" of information on which a reasonable investor would rely in deciding to buy Pzena stock pursuant to its IPO, even where it was the largest single account.

What mattered was Pzena's assets under management (AUM) and its overall results, not the AUM in one account or the net outflows from that one account. Plaintiffs do not allege that Pzena as a whole was experiencing net outflows from October 1, 2007 to October 24, 2007, much less that Pzena as a whole was experiencing such high net outflows that it should know – a mere 23 days into the quarter – that its overall financial results would be an "extreme departure from the range of results" that could be anticipated based on currently available information (which did not occur). Moreover, the risk factors in the Prospectus plainly disclosed the risks.

This lawsuit – in which no institutional plaintiff sought to join – fails to state a claim under Section 11.

---

Pzena issued its Prospectus (even though the determination of materiality must take into account the "availability [of information] in the public domain." Klein v. Gen. Nutrition Co., 186 F.3d 338, 342 (3d Cir. 1999)). (Pl. Br. at 10-13.) Because plaintiffs have now abandoned their claim based on net redemptions in the John Hancock Classic Value Fund prior to October 1, 2007, the public availability of that information is no longer relevant.

**ARGUMENT**

Plaintiffs' brief misstates the pleading standard by leaving out key words and citing to cases that pre-date Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007). According to plaintiffs, "the Court must presume that the allegations of the Complaint are true, read as a whole, and with the Plaintiffs given the benefit of every favorable inference that can be drawn from its allegations." (Pl. Br. at 5, citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).) Scheuer does not say that: Indeed, the Second Circuit has repeatedly stated that a court must accept as true the "*factual* allegations" in the Complaint and draw all "*reasonable* inferences" in plaintiffs' favor. In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (emphasis added). Conclusory allegations and inferences not grounded in reason are meaningless. Bell Atlantic makes clear that dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege "enough facts to state a claim to relief that is plausible on its face" or failed to "raise a right to relief above the speculative level." 127 S. Ct. at 1974. This means "enough facts to raise a *reasonable expectation*" that discovery would reveal evidence of the alleged wrongdoing. Id. at 1965 (emphasis added).

## PLAINTIFFS FAIL TO STATE A CLAIM
## UNDER SECTION 11 OF THE SECURITIES ACT OF 1933

**A.    Alleged Misstatement 1 --- Describing Pzena's Decline in Assets Under Management --- Was Neither False Nor Misleading**

*The $1.8 billion decline in our AUM from June 30, 2007 to September 30, 2007 was due to approximately $2.1 billion of market depreciation, which was <u>partially offset by $0.4 billion of net inflows</u>.* (¶ 23; emphasis in Amended Complaint; Polovoy Aff. Ex. B at 5)

Plaintiffs allege that this statement of historical fact was materially misleading because "at the time these statements were made (<u>i.e.</u>, on October 24, 2007), Pzena was already experiencing net redemptions in the John Hancock Classic Value Fund." ¶ 24.[2]  As set forth in Pzena's opening brief, this allegation fails to state a claim because (1) Pzena had no obligation to include in its Prospectus the net inflow or outflow from any one particular account (much less to include in its Prospectus the net inflow or outflow *within* the fiscal quarter in progress as of the date of the IPO), and (2) the "omitted" data was not material because there is no likelihood that the "omitted" data would have "***significantly altered*** the 'total mix' of information made available" to a purchaser of Pzena common stock.

In order to state a claim, plaintiffs must first establish that both "(1) the defendant ha[d] an affirmative duty to disclose information but fail[ed] to do so, ***and*** (2) the untrue or omitted information was material."  <u>Panther Partners, Inc. v. Ikanos Commc'ns, Inc.</u>, 538 F. Supp. 2d 662, 668 (S.D.N.Y. 2008) (emphasis added).  Put another way, "[m]ateriality alone does not demand disclosure, nor does the duty to disclose encompass non-material information."  <u>Id.</u>

---

[2]    All citations to "¶ __" are to the Consolidated Amended Complaint dated April 7, 2008 (Dkt. No. 15), a copy of which was attached as Ex. A to the Affidavit of Brian H. Polovoy, sworn to May 22, 2008 ("Polovoy Aff.") (Dkt. No. 24).

There is no merit to plaintiffs' suggestion that the holding in Panther Partners was simply an "observation . . . made in the context of that case." (Pl. Br. at 14 n.5.) Indeed, while Lowinger understandably does not mention, much less distinguish, the decision in Lowinger v. Johnson, No. 05 CV 316, 2007 WL 2344882 (W.D.N.C. Aug. 16, 2007), which Lowinger did not appeal, that court rejected the same arguments she makes here, stating: "Neither Section 11(a) nor Section 12(a)(2) require issuers to include all available information concerning a company. Instead, 'the relevant SEC regulations answer the question as to what material facts are required to be stated in an issuer's registration statement and prospectus.'" Lowinger, 2007 WL 2344882, at *5 (quoting In re N2K, Inc. Sec. Litig., 82 F. Supp. 2d 204, 207 (S.D.N.Y. 2000), aff'd, 202 F.3d 81 (2d Cir. 2000)).

Lowinger does not dispute that Pzena's Prospectus disclosed all the itemized financial data about the Hancock Funds that it was required to disclose under Item 101 of Regulation S-K. Instead, following plaintiffs' usual playbook, she now argues that disclosure of the net outflows in the John Hancock Classic Value Fund was required by Rule 408 of Regulation S-K, which provides that a registration statement must include "such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made, not misleading" and Item 303 of Regulation S-K, which requires registrants to "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." (Pl. Br. at 15, 18.)

There is no merit to plaintiffs' argument. Statements of historical fact are not rendered misleading as a result of alleged omissions. In re Initial Public Offering Sec. Litig., 358 F. Supp. 2d 189, 210 (S.D.N.Y. 2004) (citing In re Sofamor Danek Group, Inc., 123 F.3d 394 (6th Cir. 1997)) (disclosure of accurate historical data does not become misleading even if less favorable results may be predictable by the company in the future). Indeed, "it is undisputed that 'accurate statements of historical fact'' are non-actionable," and nothing in Item 303 changes that. Panther Partners, 538 F. Supp. 2d at 668 (quoting IPO, 358 F. Supp. 2d at 210) (granting motion to dismiss Section 11 claim). Thus, because the statement at issue is accurate historical data – and plaintiffs do not allege that it is not – neither Rule 408 nor Item 303 are implicated.

There is no merit to plaintiffs' attempt to distinguish the caselaw holding that an issuer has no duty to disclose a reduction in sales or increase in asset withdrawals --- even of its largest account --- when its prospectus does not make future predictions as to revenue from that client and warns that the loss of the relationship could have a material effect on the issuer. See Pzena Br. at 10-12 (discussing Schoenhaut v. American Sensors, Inc., 986 F. Supp. 785 (S.D.N.Y. 1997) (as a matter of law issuer had no duty to disclose in its prospectus that orders of a customer that accounted for 32 percent of sales in the last quarter were decreasing both in absolute terms and as a percentage of the issuer's overall sales); Garber v. Legg Mason, Inc., 537 F. Supp. 2d 597, 607 (S.D.N.Y. 2008) (asset management company had no duty to disclose that it was "experiencing an increase" in customer withdrawals where prospectus disclosed that "clients can [presently] terminate their relationships with us… for any number of reasons…"); In re Verifone Sec. Litig., 784 F. Supp. 1471, 1484 (N.D. Cal. 1992), aff'd, 11 F.3d 865 (9th Cir. 1993) (no

6

duty to disclose that customers listed in prospectus were not currently ordering from the issuer).

Plaintiffs hardly distinguish Schoenhaut by saying that it "fails to discuss the implications" of Item 303 or Rule 408. (Pl. Br. at 19.) Rule 408 merely restates the text of Section 11 itself, which the court plainly discussed, and Item 303 was not implicated because, as here "'accurate statements of historical fact' are non-actionable." Panther Partners, 538 F. Supp. 2d at 668. It is also not the case, as plaintiffs state, that "in Schoenhaut there had been no disclosure of the trend of sales from the customer at issue while here, in contrast, there was an explicit disclosure concerning the percentage and trend in AUM the Company derived from its relationship as a sub-investment adviser for John Hancock." (Pl. Br. at 19.) In fact, as in Schoenhaut, Pzena's Prospectus listed the percentage of Pzena's revenue that the Hancock funds represented through the last fiscal quarter reported (ending June 30, 2007), and did ***not*** list the percentage of Pzena's revenue that the Hancock funds represented in the fiscal quarter immediately preceding the prospectus (ending September 30, 2007) or the month of October 2007 (when the Prospectus was issued). Polovoy Aff. Ex. B at 17, 88, 3. Similarly, as in Schoenhaut, the Prospectus did not predict the future revenue or AUM of the John Hancock Classic Value Fund. To the contrary, the Prospectus specifically warned: "Because our clients can reduce the amount of assets we manage for them, or terminate our agreements with them, on short notice, we may experience unexpected declines in revenue and profitability." Id. at 17.[3]

---

[3] Plaintiffs' attempt to distinguish In re Verifone Securities Litigation, 784 F. Supp. 1471, 1484 (N.D. Cal. 1992), aff'd, 11 F.3d 865 (9th Cir. 1993), similarly rests on the false assertion – belied by the Prospectus itself – that "Defendants misleadingly present a [sic] ever increasing

It is likewise insufficient to distinguish Garber by simply stating "[h]ere, in contrast, the level of withdrawals from the Fund and their impact on Pzena are specifically alleged." (Pl. Br. at 20.) In Garber, plaintiff alleged that Legg Mason, Inc., an asset management company, violated Section 11 by failing to disclose in its prospectus that it was experiencing an increase in customer withdrawals due to broker attrition. 537 F. Supp. 2d at 607, 613. Citing Schoenhaut (and having earlier specifically referenced Item 303), Judge Chin held that plaintiffs' Section 11 claim failed as a matter of law because Legg Mason had "no duty to disclose" the increase in customer withdrawals where the prospectus stated that it "was the nature of Legg Mason's business" (which is the same business as that of Pzena) that "clients can [presently] terminate their relationships with us . . . for any number of reasons, including . . . loss of key investment management personnel." 537 F. Supp. 2d at 613 (alterations in original). Pzena's Prospectus similarly warned potential investors of these risks. Polovoy Aff. Ex. B at 17, 18, 19.

Just last week, the court in In re Limelight Networks, Inc. Securities Litigation, No. CV07-01603-PHX-SRB (D. Ariz. Aug. 7, 2008), granted a motion to dismiss similar Section 11 claims. In Limelight, the prospectus disclosed two customers that each accounted for more than 10% of the issuer's revenue in the last reported quarter. Slip op. at 7-8. Plaintiffs alleged that the prospectus was misleading because it did not disclose that, for the six-month period preceding the IPO (i.e., a period that included time subsequent to the last reported quarter), neither customer accounted for more than 10% of revenue. Id. The court stated that the prospectus "addressed the quarter ended March 31,

---

string of revenue from the Classic Value Fund without revealing that the fund had, in fact, fallen into net redemptions." (Pl. Br. at 20 n.10.)

8

2007, and did not discuss the six-month period preceding the IPO.  Plaintiffs have not alleged that the statement is false, and . . . there is no duty to predict future revenue projections."  Citing Verifone, the court continued, "[T]he accurate reporting of customer concentration for the quarter ended March 31, 2007 did not create a misleading impression of future growth, and did not imply anything about customer concentration levels after the first quarter."  Id. (internal citation omitted).

    The caselaw makes plain that Pzena was not obligated to disclose the inflow or outflow of AUM for a particular customer *within* the fiscal quarter in progress as of the date of its IPO.  "[C]ourts have been reluctant to impose liability based upon a failure to disclose financial data for a fiscal quarter in progress – *let alone for the first 26 days of a quarter*."  Schoenhaut, 986 F. Supp. at 791-792 (granting motion to dismiss because omission of data showing 11 percent drop in sales in first 26 days of quarter in progress as of IPO not actionable) (emphasis added).  Plaintiffs do not mention this holding in Schoenhaut – let alone try to distinguish it.  Here, Pzena's IPO was made 23 days into the quarter.[4]

    The three cases to which plaintiffs cite do not support their claim.  (Pl. Br. at 16-17.)  In Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1210 (1st Cir. 1996), the court held that, because an issuer controlled the timing of a shelf offering (which is not at issue in this case), a plaintiff could state a Section 11 claim if the issuer possessed

---

[4]  Plaintiffs fail in their attempt to distinguish the similar decisions in Glassman v. Computervision Corp., 90 F.3d 617 (1st Cir. 1996) and In re Turkcell Iletsim Hismetler, A.S. Sec. Litig., 202 F. Supp. 2d 8 (S.D.N.Y. 2001).  Glassman affirmed a dismissal under Rule 12(b)(6). The fact that it was dismissed "after the close of discovery" is meaningless (Pl. Br. at 17 n.7); it was a pre-PSLRA case and discovery was not stayed during the pendency of the motion to dismiss.  In Turkcell, the claim that was sustained alleged an affirmative misstatement of defendant's "churn rate;" the claim that was dismissed sought to impose liability for a drop in operating income during the quarter that ended 10 days before the prospectus was issued.  The latter claim is plainly what is relevant here.

nonpublic information that the quarter in progress at the time of the offering would, in fact, be "an ***extreme departure*** from the range of results which could be anticipated based on currently available information." (emphasis added.) In Shaw, the prospectus in question was filed 11 days prior to the end of the quarter in progress (i.e., 79 days in to the quarter at issue), and plaintiffs specifically alleged that, as of the offering date, defendants knew the company "would suffer unexpectedly large losses for that quarter." Id. at 1207. The court was quick to point out that it did "not mean to imply . . . that nondisclosure claims similar to those asserted by plaintiffs here can never be disposed of as a matter of law." Id. at 1210-11 (citing cases dismissing such claims as a matter of law).

Indeed, in Turkcell, 202 F. Supp. 2d at 12, Judge Buchwald noted that the "extreme departure" test in Shaw was *not* met where plaintiffs alleged "a decline in Turkcell's operating income, but not in any other financial indicator." The Court held:

> We cannot see how the small decline in operating income represents an extreme departure from the expected range of results presented by Turkcell's Prospectus, particularly ***given the reluctance of courts to require companies to release results before, or within days of, the end of fiscal quarters. The disclosure structure set out by the SEC and the case law recognizes how unworkable and potentially misleading a system of instantaneous disclosure out[side] the normal reporting periods would be.***

Id. at 13 (emphasis added).[5]

---

[5] In Turkcell, Judge Buchwald similarly distinguished Baffa v. Donaldson, Lufkin & Jenrette, 999 F. Supp. 725 (S.D.N.Y. 1998), the only case in this District on which plaintiffs rely, noting that that case, with "very little discussion," cited allegations that defendants knew of information regarding "large financial losses" at the time of the Prospectus became effective. Turkcell, 202 F. Supp. 2d at 12 (quoting Baffa, 999 F. Supp. at 728). Here, as in Turkcell, there are "no losses whatsoever at issue." Id. The third case to which plaintiffs cite in their opposition brief, In re Sourcefire, Inc. Sec. Litig., 2008 WL 1827484 (D. Md. Apr. 23, 2008), adopted the Shaw "extreme departure" test, while noting that "it is undoubtedly true that companies are not usually under an obligation to release mid-quarterly financial information in advance of an IPO." Sourcefire involved an IPO three weeks before the end of the quarter, in marked contrast to

Here, there is no allegation that Pzena as a whole was experiencing such high net outflows from October 1, 2007 to October 24, 2007 that it should know – 23 days into the quarter – that its overall financial results would be an "extreme departure" from the range of results which could be anticipated based on currently available information." Turkcell, 202 F. Supp. 2d at 12. Indeed, the Prospectus makes plain that during the quarter ending September 30, 2007 – i.e., a period up until 23 days immediately preceding the IPO – Pzena had net *inflows* of $0.4 billion (Polovoy Aff. Ex. B at 5), notwithstanding that, as plaintiffs allege, the Hancock Classic Value Fund "had fallen into net redemptions" during that time. ¶ 25. Notwithstanding that the John Hancock Classic Value Fund is Pzena's largest single account, it is still just one account and Pzena could – and did – have net inflows into its accounts even during a time where its largest single account had fallen into net redemptions. More importantly, net asset flows are one factor in AUM but, as Pzena's Prospectus makes clear, market performance is the biggest driver of an increase or decrease in AUM.

B.  **Alleged Misstatement 2 --- The Reason for the Reopening of Pzena's Investment Strategies --- Was Neither False Nor Misleading**

*Additional capacity [in our investment strategies] may be created by asset flows or substantial growth in the markets in which we invest, and we will periodically add new clients as a result of additional capacity. As a result,* ***we have recently reopened our Large Cap Value, Value Service, Small Cap Value, Mid Cap Value and All Cap Value strategies, primarily as a***

---

Pzena's IPO three weeks from the beginning of the quarter. The recent decision Lowinger's counsel submitted to the Court by letter dated August 7, 2008 is even less relevant. In In re Worldspace Securities Litig., 2008 WL 2856519, at *6 (S.D.N.Y. July 21, 2008), plaintiffs alleged Worldspace's prospectus affirmatively misstated the number of paid subscribers to its radio service on a given date because the number of subscribers disclosed in the prospectus allegedly included "subscriptions which were expired but not yet disconnected." Here, in contrast, plaintiffs do not dispute that the net asset flow Pzena disclosed was an accurate statement of historical fact, but instead argue that Pzena was required to disclose subsequent asset flows of one account during the first few weeks of the fiscal quarter in progress as of the IPO.

11

>*result of the growth in their respective investable universes.*  (¶ 21 (emphasis in Amended Complaint); Polovoy Aff. Ex. B at 84.)

Plaintiffs' opposition brief all but abandons the Amended Complaint's allegation that the Prospectus falsely represented Pzena's "primary motivation for re-opening the John Hancock Classic Value Fund." ¶ 22 (emphasis added).  As set forth in our opening brief, Pzena's Prospectus makes no statement as to the reasons why *John Hancock Advisers*, which advises the John Hancock Classic Value Fund, decided to re-open the *John Hancock Classic Value Fund*.  Instead, as one would expect for an IPO of *Pzena* stock, the Prospectus discussed the investment strategies offered by Pzena and explained why *Pzena* decided to reopen *Pzena's investment strategies*.  Polovoy Aff. Ex. B at 84.

Instead of conceding that they misread the Prospectus, plaintiffs offer a two-sentence argument that misses the point completely.  According to plaintiffs, "Defendants assertion that John Hancock was responsible for re-opening the Classic Value Fund is a factual assertion which cannot be proven at this stage of the litigation.  Also, even if true, a discussion of the re-opening of the Classic Value Fund to new investors would normally trigger a duty to disclose the then recent flow of redemptions." (Pl. Br. at 15-16 (citations omitted).)  The point, however, is that Pzena's Prospectus did not make *any* statement concerning the reopening of the John Hancock Classic Value Fund; the Prospectus explained the reasons why Pzena reopened certain of its investment strategies.  It is nonsense to write of duties being triggered by "a discussion of the re-opening of the Classic Value Fund" when there is no such discussion in the Prospectus.

12

### C. Plaintiffs' Request for Leave To Amend Should Be Denied

The Court should deny plaintiffs' one-sentence request that they be granted leave to amend further "should the Court find that any aspect of Plaintiffs' claims to be inadequately pled." (Pl. Br. at 22.) The Second Circuit has made clear that plaintiffs are "not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies." Bellikof v. Eaton Vance Corp., 481 F.3d 110, 118 (2d Cir. 2007) (citation omitted). Thus, courts routinely deny boilerplate requests such as plaintiffs' where the plaintiffs have failed to formally move to amend, failed to proffer the proposed amendment, and failed to disclose any of the additional "facts" that they propose to include, thereby depriving defendants and the court of any ability to assess whether plaintiffs can ultimately cure their pleading deficiencies. Fin. Acquisition Partners LP v. Blackwell, 440 F.3d 278, 291-92 (5th Cir. 2006). This case was filed in November 2007, and plaintiffs have already amended their complaints once. Moreover, no amendment could change the text of the statements at issue in the Prospectus – both of which are statements of historical fact. Leave to amend would not change the outcome, and should not be granted here.

### CONCLUSION

For the foregoing reasons and those set forth in the Pzena Defendants' opening brief, the Amended Complaint should be dismissed with prejudice.

Dated: New York, New York
       August 15, 2008

                                      Respectfully submitted,

                                      SHEARMAN & STERLING LLP

                                      By:  /s/ Brian H. Polovoy
                                                Brian H. Polovoy

                                      599 Lexington Avenue
                                      New York, NY 10022-6069
                                      Telephone: (212) 848-4000
                                      Facsimile: (212) 848-7179
                                      bpolovoy@shearman.com

                                      Attorneys for Defendants
                                      Pzena Investment Management, Inc.
                                      and Richard S. Pzena